OPINION OF THE COURT
Joseph R. Glownia, J.
This case involves questions regarding successive health insurance coverage and in particular, coverage under the Medicare title of the Social Security Act, along with the effect, if any, of the exhaustion of those coverages on both the beneficiary and the beneficiary’s health care provider.
*716 Plaintiff, Sisters of Charity Hospital of Buffalo, New York (Sisters), has commenced suit against defendant William F. Riley, III, son/guarantor of Mrs. Dorothy K. Riley, deceased, seeking $60,819.49 in outstanding hospital charges due and owing for hospital care and services provided to Mrs. Riley. Defendant has answered and by way of an affirmative defense asserted that plaintiff is barred from seeking to collect any outstanding balance under the Medicare "cap” as set out in 42 CFR 412.42. By way of counterclaim, defendant also seeks the return of $5,000 previously paid by him to plaintiff on his mother’s behalf.
Upon the motions before the court, plaintiff Sisters seeks an order granting summary judgment on its first (hospital care and services rendered) and fifth (account stated) causes of action, the striking of defendant’s affirmative defense (the so-called Medicare bar) and the denial of defendant’s counterclaim. Defendant has cross-moved for summary judgment in the amount of $5,000 upon the counterclaim and dismissal of plaintiff’s complaint upon the ground that plaintiff has been overpaid and is barred by title 42, Medicare laws, of the United States Code from collecting more than the amount allotted for covered stays.
The undisputed facts underlying the instant litigation are as follows:
Defendant’s mother, Dorothy K. Riley, was hospitalized at plaintiff Sisters on November 7, 1989, and was rendered hospital care and services by Sisters from that date until her death on September 13, 1992, some 1,041 days later.[1] Upon his mother’s admission to Sisters, defendant signed an agreement[2] that he would pay for all hospital charges resulting from Sisters’ treatment for his mother not covered by third parties.
From the November 7, 1989 date of admission until May 30, 1990 (204 days), Medicare Part "A” paid Mrs. Riley’s hospital charges based on her statutory and regulatory entitlement to coverage for 90 days of inpatient hospitalization and 60 days lifetime reserve, along with 54 then existing catastrophic coverage days (see, 42 CFR 412.42). On May 30, 1990, Medicare Part "A” ceased payment. Blue Cross then paid Mrs. Riley’s hospital *717 charges for the next 275-day period of time from May 31, 1990 until March 2, 1991, when the limits of its coverage were exhausted.
On March 2, 1991, defendant paid Sisters $5,000 toward his mother’s incurred charges. From March 2, 1991 until May 31, 1992 (457 days), neither Medicare "A” nor Blue Cross provided coverage. During that period of time private insurers and Medicare "B” paid $192,549.50 towards Mrs. Riley’s hospital charges as billed by plaintiff, leaving a balance due and owing in the amount of $60,819.49. This is the amount for which plaintiff now seeks summary judgment.
From June 1, 1992, presumably when the decedent became Medicaid eligible until her death on September 13, 1992, a total of 104 days, Mrs. Riley’s hospital charges incurred were covered in full by Medicaid.
It is defendant’s position upon these motions that plaintiff Sisters accepted his mother as a patient under the provisions of the Medicare system which had established a Prospective Payment System (PPS) limiting the amount a hospital was able to collect once the patient was accepted into the hospital. It is argued that plaintiff Sisters was obligated to accept the Medicare payments as payment in full under PPS and could not charge the patient (defendant/guarantor) for the difference.
In support of defendant’s position, great reliance is placed on the PPS implementing regulation, in particular, 42 CFR 412.42 (a), titled "Limitations on charges to beneficiaries”, and the District of Columbia Circuit Court of Appeals holding in Episcopal Hosp. v Shalala (994 F2d 879).
42 CFR 412.42 (a) reads as follows: "A hospital may not charge a beneficiary for any service for which payment is made by Medicare, even if the hospital’s costs of furnishing services to that beneficiary are greater than the amount the hospital is paid under the prospective payment systems [PPS].”
The court in Episcopal Hosp. (supra, at 882) noted: "In implementing the PPS, the Secretary promulgated regulations modifying prior Medicare coverage rules. See 48 Fed. Reg. 39,752 (1984) (codified of 42 C.F.R. § 405 et seq. (1992)). Inpatient hospital stays involving at least one day of Medicare eligibility would be treated as fully 'covered’ stays under Part A, for which the PPS payment itself would represent payment in full, regardless of the length of stay or extra costs attending the patient’s recovery. 42 C.F.R. § 412.42 (b)(2) (1992) (formerly 42 *718 C.F.R. § 405.70 (b)(2)(ii) (1984)). Because hospitals were prohibited from billing costs not fully reimbursed by Medicare, id. § 412.42 (a), the 'balance’ in effect was no longer reimbursable. ” (Emphasis supplied.)
In interpreting the implementing regulations and rejecting the joint hospitals’ attack on the Secretary’s discretionary refusal to adjust base-year computations to offset the effect of a change in regulations from the prior reasonable cost system to the current PPS rates system, the Episcopal Hosp. court (supra, at 884) further stated: "We note that the root cause of [the hospitals’] objection to the PPS implementing regulations lies not in the refusal of adjustments, but rather in 42 CFR 412.42 (a), which prohibits hospitals from charging Medicare patients whose bills exceed the amount paid to the hospital under the PPS * * * Obviously, this regulation may prevent health care providers from recouping losses which they may sustain when a Medicare patient remains with them beyond the average stay per ailment or requires greater than average care” (emphasis supplied).
While instructive in referencing a covered stay which may go beyond the Diagonsis Related Group average, the Episcopal Hosp. opinion (supra) however does not address a post-exhaustion of benefits issue.
Under the PPS payment system (see, 42 CFR 412.2 [a]), "[H]ospitals are paid a predetermined amount per discharge for inpatient hospital services furnished to Medicare beneficiaries.” Generally speaking, the amount paid to the hospital is capped at the PPS rate based on hospital operating and capital-related costs and is full payment to the hospital discharging the patient as long as "there is at least one Medicare payable day of care.” (42 CFR 412.2 [b]; 412.4 [c].) All covered inpatient hospital services furnished to beneficiaries are paid for under the PPS which includes all care services for a covered stay until the date of discharge, or until the patient is notified that care is no longer covered because it no longer meets the coverage criteria. Discharge occurs under 42 CFR 412.4 (a) when a patient is formally released from the hospital, the patient dies, or when the patient is transferred to a facility excluded from the PPS system.
Defendant argues since the exhaustion of inpatient benefits is not included in the regulatory definition of discharge, there exists no support in Medicare statute or regulation for the proposition that Mrs. Riley’s care changed from covered to noncovered.
*719 Plaintiffs position is that while it agrees the regulations against charging beneficiaries are applicable when a covered stay does not exceed durational limitations, Medicare regulations do not prohibit charging patients post-exhaustion of benefits. Therefore, the responsibility for services rendered from that point lies with the patient or those paying on her behalf, such as her Medigap insurer, Medicaid, or as in this case, her personal representative /guarantor.
The essential difference between the parties in this action is their respective view of the extent of coverage afforded by Medicare "A”. Simply stated, defendant maintains that a patient has a covered stay until discharge, even if Medicare ceases payment after exhaustion of coverage during that stay and therefore the hospital may not look to the patient once Medicare ceases to pay. Plaintiff contends that defendant’s position disregards the possibility of exhaustion of coverage during the course of a prolonged hospitalization and ignores the durational limits of 42 USC § 1395 (d). Plaintiff maintains that the PPS rates system only applies to a hospital until the durational limits are exhausted. Upon exhaustion, when Medicare ceases payment for items and services, plaintiff is free to charge the patient and those responsible for her care.
The position of The Healthcare Association of New York State and The Western New York Healthcare Association (The Associations) is in agreement with plaintiff that the Medicare Act authorizes billings to and payments from third parties when benefits are exhausted.
The Medicare benefit as an insurance benefit is the entitlement to have payments made to providers, but it is not an unlimited entitlement, existing only for certain specified time periods, and calculated in much detail. In this case under 42 CFR 409.60-409.68 there is a maximum payment for 90 regular days and 60 lifetime reserve days for any one hospitalization. The defendant’s position ignores 42 CFR 412.42 (e), titled "Services furnished on days when the individual is not entitled to Medicare Part A benefits or has exhausted the available benefits”. This regulation authorizes providers to charge third parties under circumstances where outlier days of care are both exhausted and noncovered. Outlier days are defined as the period of in-patient hospital services rendered to a beneficiary either whose length of stay exceeds the mean length-of-stay for the beneficiary’s Diagnosis Related Group, or whose services exceed adjusted cost formula. This is the situation presented in Mrs. Riley’s case.
*720 Further, the existence of Medigap insurance coverage is a congressional recognition that some patients, such as Mrs. Riley, would remain hospitalized beyond benefit periods, and would require supplemental insurance to cover extended care. Were this court to adopt the defendant’s position that no beneficiary liability exists for post-exhaustion care, Medigap insurance would be an unnecessary circumstance and one which could not be reconciled with congressional activity to ensure private insurance coverage for post-exhaustion care.
Not insignificantly, the implementing agency itself, through it’s hospital billing manual[3] authorizes providers to charge beneficiaries the providers’ customary charge for services rendered and items furnished after exhaustion of the beneficiaries’ Part "A” coverage. This is the agency’s interpretation of its own regulation and therefore given considerable weight.
Considering the durational limits of benefit periods; the statutory and regulatory intent to negate a double recovery for services rendered while benefit periods are not exhausted (which is not affronted in this case); the recognition of the need for post-exhaustion benefits through Medigap insurance; the implementing agency’s own counsel recognizing that healthcare providers can charge for services post-exhaustion; and the inability to find any authority which would prevent a provider from charging defendant as it did, this court finds that the present Medicare statutory and regulatory scheme does not operate as a ban to healthcare providers to charge beneficiaries for services provided in post-exhaustion of benefits situations.
Accordingly, plaintiff’s motion for summary judgment as requested is hereby granted and defendant’s motions in all respects are denied.

. It is not clear from the record before this court what prompted Mrs. Riley’s hospital admission, nor do we know what transpired in the course of her treatment that resulted in such (a) lengthy confinement and ultimately her death.

. For purposes of this motion, the validity of this agreement is not in dispute.

. Health Care Finance Administration, US Dept of Health & Human Servs, pub No. 10, Medicare Hosp Manual § 415.3 (E), at 4-162 — 4-163 (rev No. 592 [1990]).