VENCOR, INC., Plaintiff,

v.

PHYSICIANS MUTUAL INSURANCE
COMPANY, Defendant.

Civil Action No. 98–00443 (HHK).

United States District Court,
District of Columbia.

Jan. 21, 1999.

Bradley L. Kelly, Laura J. Oberbroeck-ling, Matthew · C. Hurley, Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, · P.C., Washington, DC, for plaintiff.

Stephen A. Fennell, K. Lee Blalack, II, Steptoe & Johnson, LLP, Washington, DC, James J. Frost, Terrence D. O'Hare, McGrath, North, Mullin Kratz, P.C., Oma-ha, NE, for defendant.

## MEMORANDUM

KENNEDY, District Judge.

Plaintiff, Vencor, Inc. (Vencor), is a De-laware corporation that owns and operates long-term intensive care hospitals through-out the United States. Defendant, Physi-cians Mutual Insurance Company (Physi-cians Mutual), is an insurance company that sells insurance policies which supple-ment the health care benefits provided to persons eligible for Medicare.

In this action, Vencor seeks to recover sums from Physicians Mutual for care that Vencor provided to individuals insured un-der Physicians Mutual policies after those persons had exhausted their Medicare Part A benefits.[1] Vencor asserts that in the absence of a clear regulatory or statu-tory prohibition, there is no limit on the daily rate it can charge for such services. Physicians Mutual disagrees, maintaining that for those patients who have supple-mental insurance the regulations govern-ing the certification of supplemental insur-ers require Vencor to accept payment at the Medicare rate. Because Physicians Mutual has already paid Vencor for the services provided to its insureds at the Medicare rate, Physicians Mutual asserts that it does not owe Vencor any additional amounts and, therefore, is entitled to judg-ment as a matter of law. The court agrees

with Physicians Mutual and, accordingly, will deny Vencor's motion for partial sum-mary judgment and grant Physicians Mu-tual's motion for summary judgment.[2]

## I. BACKGROUND

Medicare supplemental insurance poli-cies, also known as "Medigap" policies, are offered by private insurers such as Physi-cians Mutual to supplement the health care benefits provided by Medicare. Medicare Part A provides limited coverage for, *inter alia*, inpatient hospital stays such as those involved in this case. 42 U.S.C. § 1395c. Medicare Part A provides coverage for up to 90 days for a hospital-ization, which is defined more technically as a "benefit period" in 42 C.F.R. § 409.61. During the first 90 days of hospitalization, Medicare pays for all covered services ex-cept for certain deductibles and co-insur-ances, which are the responsibility of the beneficiary. A patient hospitalized for more than 90 days may draw upon a "life-time" reserve of 60 days of additional Medicare coverage (again excluding a co-insurance amount). 42 U.S.C. § 1395d; 42 C.F.R. § 409.61.

Under Medicare Part A, most providers of inpatient hospital stays are paid pursu-ant to a "Prospective Payment System" (PPS). 42 U.S.C. § 1395ww(d); 42 C.F.R. pt. 412. PPS providers are paid at a predetermined rate based upon the "diag-nostic related group" (DRG) classification of the patient's illness at the time of ad-mission. PPS providers are able to recov-er additional reimbursement for hospital-izations with unusually long lengths of stay or high costs. These cases are referred to as "outliers." 42 C.F.R. § 412.80 et seq.

Vencor is excluded from the PPS/DRG payment system because it is a long-term

---

1. The amounts Vencor attempts to collect for each patient in this suit are at least three times greater than what it can collect at the Medicare rate. For example, Vencor has billed Physicians Mutual $264,006 for ser-vices provided to Robert R. Duncan after his Medicare Part A benefits expired. If the Medicare per diem rate is used instead, Ven-

cor may only charge $30,462 for those ser-vices. Compl. ¶ 58–62.

2. Vencor concedes that if it is restricted to receiving payment at the Medicare rate it is not entitled to recover any more than it has been paid already. Vencor Mot. at 2.

care hospital. 42 C.F.R. § 412.23(e). Instead, PPS-exempt providers such as Vencor are paid the "reasonable cost" of services for Medicare beneficiaries. Thus, unlike PPS providers who are paid a set amount for all cases but outliers, PPS-exempt providers are reimbursed by Medicare Part A at a per diem rate for each day that a patient has Medicare Part A benefits.

In 1980, Congress established a voluntary program under which a Medigap policy could be certified as meeting the Model Standards adopted by the National Association of Insurance Commissioners ("NAIC"). Social Security Disability Amendments of 1980, Pub.L. No. 96–285 (1980) (codified as amended at 42 U.S.C. § 1395ss (1992 & Supp.1998)). The NAIC is comprised of 55 members who are the "chief insurance regulatory officials of the 50 states, the District of Columbia, and four U.S. territories." See NAIC letter to HCFA 1 (July 8, 1998). Def.Exh. A. In 1990, Congress passed a law that required the NAIC to standardize the Medigap policies that could be offered by supplemental insurers. Omnibus Budget Reconciliation Act of 1990 Pub.L. No. 101–508 (1990) (codified as amended at 42 U.S.C. § 1395ss(p) (1992 & Supp.1998)). In contrast to the earlier, voluntary certification system, the 1990 law was a mandatory system that required states to adopt the same standardization requirements as those in the revised NAIC Model Regulations. In 1992, the Health Care Financing Administration (HCFA) promulgated regulations adopting the NAIC Model Regulations. 42 C.F.R. § 403.200; 57 Fed.Reg. 37,980 et seq. (August 21, 1992).

Under the Model Regulations, as adopted by HCFA, every certified Medigap insurer shall make available upon a beneficiary's exhaustion of Medicare Part A hospital inpatient coverage: "coverage of the Medicare Part A eligible expenses for hospitalization paid at the Diagnostic Related Group (DRG) day outlier per diem *or other appropriate standard of payment,* subject to a lifetime maximum benefit of an additional 365 days." Model Regulation § 8(B)(3); 57 Fed.Reg. 37,980, 37,991 (Aug. 21, 1992) (emphasis supplied).[3]

The Model Regulations as adopted by HCFA require that all applicants for Medicare supplemental insurance be given a guide that outlines the benefits provided. *Id.* at 37,998. The outline for each plan contains a chart that explains that for an additional 365 days "once lifetime reserve days are used," Medicare pays $0, the supplemental insurer pays "100% of Medicare eligible expenses," and the beneficiary pays $0. *Id.* at 38001–31. "Medicare eligible expenses" are expenses "of the kinds covered by Medicare, to the extent recognized as reasonable by Medicare." *Id.* at 37,988.

## II. ANALYSIS

Under Fed.R.Civ.P. 56, summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law. Material facts are those "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In considering a motion for summary judgment, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255, 106 S.Ct. 2505. But the non-moving party's opposition must consist of more than mere unsupported allegations or denials and must be supported by affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for trial.

---

**3.** On December 4, 1998, HCFA adopted the NAIC Model Regulations, "as corrected and clarified by HCFA" to be the "applicable NAIC Model Regulation for the purposes of ... the Social Security Act ." 63 Fed.Reg. 67078 (Dec. 4, 1998). None of the changes affected the Model Regulations relevant to this litigation.

**4**

Fed.R.Civ.P. 56(e); *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The non-moving party is "required to provide evidence that would permit a reasonable jury to find" in its favor. *Laningham v.. United States Navy,* 813 F.2d 1236, 1242 (D.C.Cir.1987). If the evidence is "merely colorable" or "not significantly probative," summary judgment may be granted. *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505.

## A. Federal Regulations

The NAIC Model Regulations, as adopted by HCFA, require providers to accept reimbursement at the Medicare approved rate as reimbursement in full. First, the Model Regulations require supplemental insurers to reimburse PPS-exempt providers at the Medicare rate. Section 8(B)(3) of the Model Regulations requires supplemental insurers to provide coverage for hospitalization at the "diagnostic related group (DRG) day outlier per diem or other appropriate standard of payment." 57 Fed.Reg. 37,980, 37,991. From the text of this regulation alone, one can infer that the term "appropriate standard" imposes a limit on what PPS-exempt providers may collect from Medigap insurers.

The requirements of Model Regulation § 8(B)(3) should be viewed in the context of the Model Regulations as a whole and the interpretation of them by HCFA. Under the Model Regulations, a Medigap insurer pays 100% of "Medicare eligible expenses" to the "extent recognized as reasonable and medically necessary by Medicare." *Id.* at 38,001–31, 37,988. After these regulations were adopted by HCFA in 1992, HCFA stated that the "other appropriate standard of payment" refers to the "amount Medicare would

have paid if Medicare were covering the stay." Letter from HCFA to the South Carolina Department of Insurance (Feb. 12, 1992). Def's Exh. A. This is the official interpretation of the regulation, according to an affidavit prepared by the author of the letter, the then-director of the Division of Provider Services of HCFA. Hoyer Aff., Def.Exh. A. Vencor has not provided any evidence that HCFA's *official* position is different than what is stated in this letter.[4] Thus, the court's resolution of this issue is guided by HCFA's interpretation of its own regulations. See *Auer v. Robbins,* 519 U.S. 452, 117 S.Ct. 905, 909–912, 137 L.Ed.2d 79 (1997) (deferring to an agency's resolution of ambiguities in its own regulations where that resolution was "based upon a permissible construction of the statute") (citing *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–843, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)).

Second, the Model Regulations as adopted by HCFA require PPS-exempt providers such as Vencor to accept the payment from a Medigap insurer as complete reimbursement for services rendered. The plan description adopted by HCFA states that once Medicare A benefits have been exhausted, the supplemental insurer pays "100% of Medicare eligible expenses" and a Medicare beneficiary with supplemental insurance "pays 0" for the first 365 days of hospitalization. 57 Fed. Reg. 37980, 38001–31. Therefore, providers are not able to recover from beneficiaries the difference between their charges and the Medicare per diem rate paid by the Medigap insurer.

The NAIC, the organization that initially drafted the Model Regulations adopted by HCFA, agrees with this interpretation of

---

**4.** The views of other HCFA officials to the contrary, as recorded in the minutes of a NAIC meeting, are not dispositive. See *Serono Laboratories v. Shalala,* 158 F.3d 1313, 1321 (D.C.Cir.1998) (*"Chevron* deference is owed to the decisionmaker authorized to speak on behalf of the agency, not to each individual agency employee . . . Indeed, were we to hold otherwise, we would effectively empower any individual employee not just to veto the views of the agency head, but to preclude any deference to the agency at all, since we would have no basis for deciding to whose view we should defer.").

the Model Regulations. The NAIC has stated that "HCFA can and has interpreted existing federal laws and regulations to prohibit any provider from billing above the Medicare-approved amount after the beneficiary has exhausted hospital stay benefits, and require the provider to accept reimbursement from the insurer at the Medicare rate as payment in full." NAIC letter to HCFA (July 8, 1998).[5]

Vencor has not offered an alternative interpretation for Model Regulation 8(B)(3). Indeed, Vencor does not address the Model Regulations and points to other federal regulations that purportedly allow it to charge whatever it believes appropriate. Under Vencor's theory, 42 C.F.R. § 489.21(c) is a relevant regulation, because it states that a provider may not charge a beneficiary for "inpatient hospital services furnished to a beneficiary who exhausted his or her Part A benefits, if HCFA reimburses the provider for those services." It is immediately apparent, however, that this provision is inapplicable here because Vencor is seeking reimbursement from a Medigap insurer, not HCFA.

Vencor's reliance on 42 C.F.R. § 412.42(e) is also misplaced. Section 412.42(e), in pertinent part provides,

> [t]he hospital may charge the beneficiary its customary charges for noncovered items and services furnished on outlier days ... for which payment is denied because the beneficiary is not entitled to Medicare Part A or his or her Medicare Part A benefits are exhausted.

Even if this provision were construed to allow **PPS providers** to charge a beneficiary the providers' "customary charges" when Medicare Part A benefits are exhausted—a construction that would be at odds with the requirement in the Model Regulations that a beneficiary with supplemental insurance pays "0" for 365 days of hospitalization after Medicare Part A benefits are exhausted—the regulation does not apply to **PPS-exempt providers** such as Vencor. Analysis bottomed on extrapolation from regulations governing PPS providers is unhelpful when there are Model Regulations that govern a PPS-exempt provider's charges.

### B. The Statutory Framework

Instead of addressing the meaning of the Model Regulations adopted by HCFA, Vencor argues that the laws which establish the Medigap insurance system impose no limits on what it can charge patients when they have exhausted Medicare Part A benefits. This argument relies on an unworkable understanding of the pertinent law and HCFA's role in implementing that law. As one court has stated, "the existence of Medigap insurance is a Congressional recognition that some patients ... would remain hospitalized beyond benefit periods, and would require supplemental insurance to cover extended care." *Sisters of Charity Hosp. of Buffalo v. Riley,* 168 Misc.2d 715, 642 N.Y.S.2d 462, 465 (Sup. Ct.1996), *aff'd as modified,* 231 A.D.2d 272, 661 N.Y.S.2d 352 (1997) (holding that PPS providers may bill beneficiaries once Medicare Part A benefits are exhausted). The purpose of the 1990 amendments to the Medigap system was to prevent deceptive practices by Medigap insurers and to "insure the elderly a better return on their premium dollars for Medigap [policies]." H.R.Rep. No. 101–881, at 91, *reprinted in* 5 U.S.C.C.A.N. 2103. The purpose of the federal requirements implementing the

---

5. Indeed, on December 7, 1998 the NAIC proposed an amendment to the model regulations that would clarify this issue. The amendment includes the following statement in the outline of coverage that supplemental insurers are required to provide to beneficiaries:

> When your Medicare Part A hospital benefits are exhausted, the insurer stands in the place of Medicare and will pay whatever amount Medicare would have paid for up to an additional 365 days ... During this time the hospital is prohibited from billing you for the balance based on any difference between its billed charges and the amount Medicare would have paid.

Def.Exh. A at 20, Def.Mot. to Suppl.Rec. HCFA has not yet adopted the amendment.

Medicare laws is "to enable Medicare beneficiaries to identify Medicare supplemental policies that do not duplicate Medicare, and that provide adequate, fairly priced protection against expenses not covered by Medicare." 42 C.F.R. § 403.200.

Allowing providers to charge above the Medicare rate would thwart the purposes of the Medigap scheme and would contravene the requirements of the model regulations adopted by HCFA. As the NAIC has explained, "[a]ny costs paid by insurers as a result of this provider practice are being passed on to policy holders in the form of rate increases." NAIC Letter to HCFA 2 (July 8, 1998). In contrast, prohibiting providers from billing above the Medicare rate protects "Medicare beneficiaries from potentially unaffordable premium rates for Medicare supplement insurance." *Id.*

Moreover, contrary to Vencor's contention, there is no federal law that explicitly authorizes a PPS-exempt provider to charge whatever it chooses once a patient's Medicare Part A benefits have expired. Vencor's reliance on 42 U.S.C. § 1395cc(a)(2)(B) is misplaced. Section 1395cc(a)(2)(B) states,

> [w]here a provider of services has furnished, at the request of such individual, items or services which are in excess of or more expensive than the items or services with respect to which payment may be made under this subchapter, such provider of services may also charge such individual or other person for such more expensive items or services to the extent that the amount customarily charged by it for the items or services furnished at such request exceeds the amount customarily charged by it for the items or services with respect to which payment may be made under this subchapter.

It is apparent that § 1395cc(a)(2)(B) only covers the limited circumstance where a Medicare beneficiary specifically requests services which are in excess of, or more

expensive than, those offered under Medicare. *Id.* Such circumstances are not present in this case.

■ The court also rejects Vencor's cursory assertion that HCFA lacks the authority to limit what providers can charge Medicare beneficiaries who have supplemental insurance. As a general matter, Congress has authorized HCFA to promulgate "regulations as may be necessary to carry out the administration of the insurance programs under [the Medicare] subchapter." 42 U.S.C. § 1395hh(a). As part of the 1990 law revising the Medicare supplemental insurance program, Congress directed HCFA to promulgate regulations governing Medicare supplemental insurance policies if the NAIC failed to issue model regulations that conformed to the new statutory requirements. 42 U.S.C. § 1395ss(p). Therefore, HCFA has the authority to enact regulations that affect patients whose Medicare Part A benefits have expired because HCFA has the authority to regulate Medigap policies, which are defined by statute as "a health insurance policy ... offered by a private entity to individuals who are entitled to have payment made under [the Medicare] subchapter." 42 U.S.C. § 1395ss(g)(1).

## C. Case Law

None of the cases cited by Vencor support its contentions. In *Vencor Hospitals South, Inc. v. Blue Cross Blue Shield of R.I.*, 929 F.Supp. 420, 422 (S.D.Fla.1996), *appeal docketed*, 169 F.3d 677 (11th Cir. 1999), the court rejected without discussion Vencor's right to charge its full daily rate after Medicare Part A benefits were exhausted. Vencor's suggestion that *Vencor Hospitals South, Inc. v. National States Insurance Company*, 1995 Lexis 21544 (M.D.Fla. June 22, 1995), *aff'd* 120 F.3d 274 (11th Cir.1997), should control the outcome of this case is particularly without merit. In *National States*, the district court granted partial summary judgment to plaintiff-Vencor on the issue of the defendant's contractual obligations

as contained in the defendant's insurance policies. The court held that the language in the defendant's insurance policy was ambiguous as to whether the defendant would pay the plaintiff's actual charges or whether it would pay the Medicare rate of payment, and therefore construed the policy to provide full coverage. *Id.* at *11–12. The district court's opinion did not refer to any of the regulations or statutes governing supplemental insurers and did not address the argument raised here that supplemental insurers are not required to pay more than the Medicare per diem rate.

In this case by contrast, Vencor has asked for a ruling solely on the issue of whether the regulations permit it to charge Medigap insurers more than the Medicare rate. Neither party has addressed whether Physicians Mutual obligated itself to pay more than the Medicare per diem rate in the insurance policies it issued. Therefore, neither the district court's opinion in *National States,* nor the 11th Circuit's summary affirmance of that decision, has any bearing on the requirements of the Medicare statute and regulations at issue here. Similarly, all other cases between Vencor and Medigap insurers have been resolved on the basis of the contractual agreement between the parties. *See, e.g., Vencor Hospitals–Tampa v. Standard Life and Accident Insurance Co.,* No. 97–1976–CIV–T–26E, Slip. Op. at 5 (M.D.Fl. Sept. 22, 1998) (holding that defendant's policy unambiguously limited coverage to the Medicare per diem rate).

In *Sisters of Charity Hospital, supra,* the court held that 42 C.F.R. § 412.42 does not ban PPS providers from charging Medicare beneficiaries once Medicare Part A benefits have been exhausted. *Id.* 642 N.Y.S.2d at 465. As explained above, 42 C.F.R. § 412.42 does not apply to PPS-exempt providers. Moreover, the court relied on a 1990 HCFA manual that authorized PPS providers to charge beneficiaries the providers' "customary charge" after the exhaustion of Part A coverage. *Sisters of Charity Hospital, supra* at 465.

Here, in contrast, the plaintiffs have not presented any HCFA materials that authorize PPS-exempt providers to charge beneficiaries above the per diem Medicare rate.

### III. Conclusion

For the foregoing reasons, Physicians Mutual is entitled to prevail because Vencor may not collect more than the Medicare per diem rate for patients whose hospitalization is covered by Medigap insurance. Accordingly, Vencor's motion for partial summary judgment must be denied and Physicans Mutual's motion for summary judgment must be granted.

An appropriate order accompanies this memorandum.

### ORDER AND JUDGMENT

Pursuant to Fed.R.Civ.P. 58 and for the reasons stated by the court in its memorandum docketed this same day, it is this 22nd day of January, 1999 hereby

**ORDERED and ADJUDGED** that judgment is entered in favor of the defendant; and it is further

**ORDERED and ADJUDGED** that the complaint in this case is dismissed.