VENCOR HOSPITALS d.b.a. Vencor Hospital, Plaintiff-Appellant-Cross-Appellee,

v.

BLUE CROSS BLUE SHIELD OF RHODE ISLAND, Defendant-Appellee-Cross-Appellant.

No. 96-5105.

United States Court of Appeals,

Eleventh Circuit.

March 8, 1999.

Appeals from the United States District Court for the Southern District of Florida. (No. 94-6881-CV-JAG), Jose A. Gonzalez, Judge.

Before TJOFLAT and BIRCH, Circuit Judges, and RONEY, Senior Circuit Judge.

TJOFLAT, Circuit Judge:

This case hinges on the interpretation of certain terms in an insurance contract. Because we are uncertain exactly which documents comprise the contract, we remand the case for further proceedings in the district court.

I.

Medicare Part A, part of the federally-provided health care insurance program for older adults, pays for up to ninety days per benefit period[1] of medically necessary inpatient hospital care. If a patient requires more than ninety days of hospitalization during a benefit period, he may use some of his sixty "lifetime reserve days" (which, as the name suggests, are not renewed each benefit period). Once a patient has been hospitalized for over ninety days and has exhausted his supply of reserve days, he is not eligible for Medicare hospitalization benefits until the beginning of a new benefit period.

---

[1] A Medicare "benefit period" begins on the first day a beneficiary is hospitalized and ends when the beneficiary has not been an inpatient in a hospital or nursing home for 60 consecutive days. *See* 42 U.S.C. § 1395x (1994) (using "spell of illness" instead of "benefit period").

In response to this and other limits on Medicare coverage, insurance companies began issuing Medicare supplement insurance, commonly known as "Medigap" policies. These policies provide coverage for, *inter alia,* the portion of an extended hospital stay not covered by Medicare.

Blue Cross/Blue Shield of Rhode Island ("BCBS") issued Medigap policies to Martha Butler and Aniello Esposito. Butler and Esposito were both admitted to Vencor Hospital in Ft. Lauderdale, Florida, and required care for a period exceeding their Medicare coverage. During the period of Medicare coverage, Vencor charged Butler and Esposito only the copayment or deductible required under Medicare (which, in turn, was paid for by BCBS under the Medigap policy). Vencor's costs during this period were reimbursed by Medicare. After Medicare coverage expired, Vencor began charging Butler and Esposito its ordinary rates. These rates included a substantial amount of profit, and were therefore greatly in excess of the amount Vencor had previously been receiving as cost reimbursement from Medicare.

After Butler and Esposito finished their hospital stays, Vencor sought payment from BCBS. Butler's and Esposito's Medigap policy provided for coverage as follows: "Upon exhaustion of all Medicare hospital inpatient coverage ... we will cover up to ninety percent (90%) of all Medicare Part A Eligible Expenses for hospitalization not covered by Medicare...." BCBS claimed that the policy covered ninety percent of what Medicare would have paid (i.e., cost reimbursement) for any necessary treatment; thus, Vencor was entitled only to that amount and not to ninety percent of its ordinary charges. BCBS consequently paid Vencor $240,582.13 as full payment under the policies.[2] Vencor interpreted the policy somewhat differently—it claimed that the policy covered ninety percent of the ordinary amount charged for any Medicare-approved treatment. Vencor therefore brought suit in the United States District Court for the Southern District of Florida to recover the remaining $710,725.71 it believed was due.[3]

---

[2] BCBS paid Vencor $40,921.19 for Esposito's claim and $199,660.94 for Butler's claim. Esposito's claim was paid directly to Vencor; Butler's claim was paid to Butler in a series of checks that were given unendorsed to Vencor.

[3] Vencor sought $157,419.36 on the Esposito claim and $553,306.35 on the Butler claim.

The district court granted summary judgment for BCBS on the ground that the policy unambiguously limits payment to ninety percent of what Medicare would have paid. Vencor appeals.

II.

BCBS, as an initial matter, challenges Vencor's standing to raise a claim. BCBS' contracts were with Butler and Esposito—not Vencor—and therefore, according to BCBS, only Butler and Esposito have standing to sue for any breach.

We hold that Vencor is a third-party beneficiary of the contracts between BCBS and Butler and Esposito, and therefore has the right to sue for breach of the insurance contract. A party has a cause of action as a third-party beneficiary to a contract if the contracting parties express an intent primarily and directly to benefit that third party (or a class of persons to which that third party belongs). *See Daniel v. Florida Residential Property & Cas. Joint Underwriting Ass'n,* 718 So.2d 936, 937 (Fla. 3d DCA 1998).[4] It would be hard to imagine a more direct benefit under a contract than the receipt of large sums of money. That is exactly the benefit intended for Vencor—as the hospital providing services to the insured—under the contracts between BCBS and Butler and Esposito. The Medigap policy held by Butler and Esposito states, "Benefit payments may be paid to the doctor, hospital or to you directly at our discretion." By providing for payment directly to the hospital, the contracting parties showed a clear intent to provide a direct benefit to Vencor (or any other service-providing hospital), and thus Vencor has standing to bring this suit.[5] *See United*

---

[4]BCBS argues that the law of Rhode Island should apply to this suit. The district court, however, held that the law of Florida applies. The district court also held that there are no material differences between the relevant Rhode Island and Florida precedent—a holding with which BCBS does not disagree. We therefore apply Florida law, confident that the basic principles of contract law on which this opinion rests are equally applicable in Rhode Island or any other common law jurisdiction.

[5]The fact that Vencor was not identified specifically at the time of contract formation is irrelevant to whether Vencor is a third-party beneficiary. *See* 4 Arthur Linton Corbin, *Corbin on Contracts* § 781 (1951) ("[I]t is not necessary that [the third-party beneficiary] be identified or identifiable at the time the contract is made. It is enough that he be identified at the time performance is due." (footnote omitted)). Also, the fact that BCBS has discretion to pay either Vencor or the insured does not deprive Vencor of standing. If an absolute right to payment were required for standing, no one (including the insured) would have standing to enforce the policy.

3

*States v. Automobile Club Ins. Co.,* 522 F.2d 1, 3 (5th Cir.1975) (interpreting similar contract language);[6]

*Orion Ins. Co. v. Magnetic Imaging Sys. I,* 696 So.2d 475, 478 (Fla. 3d DCA 1997) ("Medical service

providers ... have been recognized as third party beneficiaries of insurance contracts.").

III.

Having determined that Vencor has standing to bring a claim, we must now determine whether there

is a genuine issue of material fact regarding whether Vencor is entitled to payment based on its ordinary

charges. We hold that there is, and therefore remand the case to the district court for further proceedings.

Under the policy, Vencor is entitled to ninety percent of "all Medicare Part A Eligible Expenses for

hospitalization not covered by Medicare." Eligible expenses are defined as "the health care expenses covered

under Medicare which Medicare has determined are reasonable and medically necessary." The debate

between Vencor and BCBS centers on whether the phrase "health care expenses" in this definition refers

exclusively to types of expenses—in other words, forms of treatment—or also includes amounts of expenses.

It is unclear, however, whether the insurance policy is the only document comprising the contract

between BCBS and each of the insureds. The record also contains an "Outline of Coverage" that is highly

ambiguous regarding the scope of the policy's coverage.[7] If this outline is considered part of the contract,

---

[6]In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

[7]The Outline of Coverage states that upon exhaustion of Medicare benefits, the policy pays "90% of Part A expenses for an additional 365 days." The outline then states that the insured pays "$0.00." Read in context, these statements suggest that the insured will at most be required to pay 10% of the hospital's charges after Medicare benefits have expired, and can easily be read to mean that the insured pays nothing. Under BCBS' interpretation of the policy, the insured may ultimately be held responsible for well over half of the hospital bill. For instance, if the hospital bill were $100, of which $50 represents costs that would be reimbursed by Medicare, BCBS would pay $45 (90% of $50), leaving $55 to be paid by the insured.

The record also contains a promotional brochure for the policy that makes certain representations regarding the policy's scope of coverage. On remand, the district court should consider the significance (if any) to be accorded this brochure in interpreting the policy.

4

then the contract is ambiguous regarding the contested issue, and that ambiguity must be resolved in favor of Vencor.  *See Epstein v. Hartford Cas. Ins. Co.,* 566 So.2d 331, 333 (Fla. 1st DCA 1990).

One reason for considering the outline to be part of the contract is that BCBS was required to provide such an outline to Butler and Esposito under state law.  *See* Fla. Admin.  Code Ann. r. 4-51.006(3) (1990); R.I. Ins. Admin.  Code r. XLVI, § 13 (1990).[8]  The policy behind the state law regulatory scheme presumably is to provide the insured with a document setting forth the insured's contractual rights with more clarity than is present in the ordinary insurance policy, thereby making it more difficult for the insurance company to defraud purchasers regarding the scope of coverage.  It is possible that the legislature's intent in this regard would be frustrated if the outline were not considered part of the contract.[9]  If the outline is merely another promotional document, and not part of the contract, then the regulatory scheme would do nothing more than create additional evidence of the fraud that the legislature intended to prevent.  This determination, however, requires an analysis of legislative intent that is best undertaken in the first instance by the district court.[10]

We also note that even if BCBS' interpretation of the policy is correct, it is nevertheless unclear what amount Vencor is due.  BCBS claims that it owes Vencor the amount Medicare would have paid for Butler's and Esposito's treatment.  The amount Medicare would have paid, however, varies according to the stage of the reimbursement process.  Throughout the year, Medicare (through an intermediary) advances payment to

---

[8]In addition to state law regulations, there are also presently federal regulations governing Medigap policies.  *See* HHS' Recognition of NAIC Model Standards for Regulation of Medigap Policies, 57 Fed.Reg. 37980 (1992);  *see also Vencor, Inc. v. Physicians Mut. Ins. Co.,* No. Civ.A. 98-00443 (D.D.C. 1999) (relying on federal regulations to interpret a Medigap policy).  These regulations, however, were promulgated after the policies in this case were issued.  *See id.* at 37980 (noting effective date of July 30, 1992).

[9]The policy contains a merger clause stating, "The entire contract consists of the application, this agreement and any attached amendments."  Such a clause would, on its face, prevent the court from considering the Outline of Coverage as part of the contract.  If the state regulatory scheme requires the Outline of Coverage to be read into the contract, however, the merger clause is irrelevant.

[10]We reserve the question whether, if the Outline of Coverage is not part of the contract, the policy standing alone would support Vencor's position.

5

Vencor based on an approximation of Vencor's costs. At the end of the year, Vencor submits a cost report to Medicare; Vencor then either receives more payment or returns some of the previous payments depending on how the actual year-end costs compare with the estimated amounts previously advanced. In addition, Medicare sets a target amount for annual costs; Vencor is forced to absorb costs that exceed this amount but receives a bonus if its costs are below the target amount. Thus, when BCBS claims that it owes Vencor only the amount that Medicare would have paid, it is unclear whether that amount is based on the preliminary advance, the final accounting, or the final accounting plus or minus some amount related to Vencor's deviance from its annual target.[11]

IV.

BCBS argues that, even if Vencor would otherwise be entitled to payment of its ordinary charges, each of Vencor's claims is barred by the affirmative defense of accord and satisfaction.[12] "An accord and satisfaction occurs where (1) the parties intended to effect a settlement or resolve an existing dispute by entering into an agreement; and (2) the parties have engaged in actual performance in relation to the new agreement in order to resolve or settle the dispute." *Pogge v. Department of Revenue,* 703 So.2d 523, 526 (Fla. 1st DCA 1997).

In regard to the Butler claim, BCBS sent a check directly to Butler in the amount BCBS considered itself obliged to pay under the policy. The check was accompanied by a cover letter stating that it represented full payment of Butler's claim. Butler then gave the check to Vencor (without the cover letter), which

---

[11]The amount actually paid by BCBS appears to have been based on the first of these options (the preliminary advance).

[12]The district court, without explanation, rejected this defense in its order granting summary judgment for BCBS. BCBS, by raising the defense on appeal presents us with an alternative ground on which to affirm the district court's grant of summary judgment—even if the district court erred in interpreting the policy in BCBS' favor, BCBS has established the accord and satisfaction defense as a matter of law. Because we have the authority to affirm a district court's summary judgment on a ground not relied upon by the district court, *see Johnson Enters. of Jacksonville v. FPL Group,* 162 F.3d 1290, 1311,n. 50 (11th Cir.1998), we consider the merits of BCBS' argument.

6

endorsed and deposited it. This evidence shows, at most, that BCBS reached an accord and satisfaction with Butler. Such an agreement would have no effect on Vencor's rights under the policy;[13] BCBS' accord and satisfaction defense therefore fails in regard to the Butler claim.

In regard to the Esposito claim, payment was made directly to Vencor. According to BCBS' Director of Provider Reimbursement, Henry Lourenco, BCBS negotiated an agreement with Carolyn Giskin of Vencor under which BCBS would pay $37,535.45 as full payment of Esposito's claim. A check in this amount was issued by BCBS and deposited by Vencor. Genuine issues of material fact exist regarding whether there was an accord and satisfaction on this claim. If Lourenco and Giskin in fact reached a settlement agreement, and if Giskin had the actual or apparent authority to act on behalf of Vencor, then such an agreement (combined with Vencor's acceptance of the check issued by BCBS) would constitute an accord and satisfaction.

### V.

For the foregoing reasons, the judgment of the district court is VACATED and the case is REMANDED for further proceedings consistent with this opinion.[14]

SO ORDERED.

---

[13]A third-party beneficiary contract creates a contractual relationship between the beneficiary and the promisor. *See* 4 Corbin, *supra,* § 779J. Thus, for any accord and satisfaction to affect Vencor's rights, Vencor would have to be a party to the accord.

[14]Vencor, in its complaint, sought relief under a promissory estoppel theory as an alternative to breach of contract. BCBS moved for summary judgment on this claim; the motion was denied. BCBS cross-appeals. Because Vencor's promissory estoppel claim was merely an alternative avenue of relief, this issue is not ripe for review until such time as the breach of contract claim is decided.