Hillsborough
No. 91-302

## DONALD AND LINDA MARSTON

### v.

## UNITED STATES FIDELITY AND GUARANTY COMPANY

June 30, 1992

*Cullity, Kelley & McDowell*, of Manchester (*Joseph F. McDowell, III* on the brief and orally), for the plaintiffs.

*Devine, Millimet and Branch, P.A.*, of Manchester (*Eileen Fox* on the brief and orally), for the defendant.

JOHNSON, J. The plaintiffs, Donald and Linda Marston, appeal from a Superior Court (*Dalianis*, J.) order granting an amended motion for summary judgment filed by the defendant, United States Fidelity and Guaranty Company (USF&G), in a declaratory judgment action. On appeal, the plaintiffs argue that the superior court erred in: (1) allowing USF&G to relitigate issues of fact after its

insured, A&E Forklift Company (A&E), had defaulted in the underlying tort action; (2) allowing USF&G to file an amended motion for summary judgment; and (3) finding that USF&G was not obligated to insure A&E under the relevant insurance policy language. We affirm.

The record establishes the following facts. Donald Marston was employed by Sandhill Warehouse Wholesale Company (Sandhill). Sandhill had purchased a forklift from A&E that continually leaked hydraulic fluid onto the warehouse floor. On October 6, 1982, Marston slipped on the hydraulic fluid while working and sustained serious injuries.

A&E maintained a comprehensive general liability insurance policy underwritten by USF&G. The policy did not cover A&E for "completed operations hazards," defined to include

"bodily injury and property damage arising out of operations . . . but only if the bodily injury or property damage occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the Named Insured. 'Operations' include materials, parts or equipment furnished in connection therewith. Operations shall be deemed completed at the earliest of the following times:

. . . .

(3) when the portion of the work out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

Operations which may require further service or maintenance work, or correction, repair or replacement because of any defect or deficiency, but which are otherwise completed, shall be deemed completed."

This policy was in effect at the time of the accident.

In July 1985, the plaintiffs sued A&E to recover for Donald Marston's injuries. Several months later, USF&G determined that the injury was not covered under A&E's insurance policy. Accordingly, USF&G informed all parties that it would not defend A&E in any further proceedings. In response to USF&G's refusal to defend A&E, the plaintiffs initiated a declaratory judgment action against A&E and USF&G in January 1986 to determine whether A&E was covered under the insurance policy.

USF&G moved for summary judgment in the declaratory judgment action, claiming that A&E's operations were "completed" under the "completed operations hazards" provision. The Superior Court (*Holman*, J.) denied this motion in December 1987. It was

> "unable to determine whether [A&E] had a continuing duty to service and maintain the forklift, such as would arise, for example, under an agreement to provide routine service on an ongoing basis, or whether [A&E] merely had an obligation to provide service and maintenance sporadically . . . . If [A&E] had an ongoing service contract with [Sandhill] for routine maintenance, then its operations would not have been completed within the meaning of the ["completed operations hazards" exclusion] . . . . In that situation, the insurer would have an obligation to defend [A&E] in the underlying tort action. If, on the other hand, [A&E] had merely agreed to repair the forklift if and when necessary, then the operation performed by it in this case would be considered as 'completed' for purposes of the policy exclusion."

In October 1988, after A&E had filed for bankruptcy, A&E's attorney withdrew from the declaratory judgment and the tort actions. It was advised to obtain new counsel or default. A&E failed to obtain new counsel. Accordingly, it defaulted in both the declaratory judgment action and the tort action.

Having obtained a default order against A&E in the underlying tort action, the plaintiffs filed a motion in limine to preclude USF&G from relitigating issues of fact in the ongoing declaratory judgment action. A&E argued that such issues were "already decided in the underlying [tort] action." The Superior Court (*Goode*, J.) denied this motion.

Next, USF&G filed an amended motion for summary judgment addressing the factual issue that the superior court had been unable to decide in December 1987: "whether A&E had a continuing duty to service and maintain the forklift." USF&G attached the affidavit of Edward G. Robinson, a former president of A&E, to its amended motion. According to Mr. Robinson, "although [A&E] after the sale did perform maintenance work on the subject forklift for [Sandhill], on each occasion necessary maintenance work was completed with no obligation or plans to return and perform further work." Based on this new information, the Superior Court (*Dalianis*, J.) granted USF&G's amended motion for summary judgment. The plaintiffs appeal from this ruling.

■ The plaintiffs first contend that the doctrine of *res judicata* barred USF&G from litigating in the declaratory judgment action whether A&E's operations were completed. Under *res judicata*, "a final judgment by a court of competent jurisdiction is conclusive upon the parties in a subsequent litigation involving the same cause of action." *Eastern Marine Const. Corp. v. First Southern Leasing*, 129 N.H. 270, 273, 525 A.2d 709, 711–12 (1987) (citations and quotation omitted); *see also Barton v. Barton*, 125 N.H. 433, 435, 480 A.2d 199, 200 (1984) (*res judicata* applies to proceedings following default judgments). The term "cause of action" is defined as "the right to recover, regardless of the theory of recovery." *Eastern Marine Const. Corp., supra* at 274, 525 A.2d at 712.

■ We hold that the underlying tort action did not involve the same cause of action as the declaratory judgment action from which the plaintiffs now appeal. In the tort action, the court had to determine whether A&E was liable to the plaintiffs for the slipping incident. In the declaratory judgment action, the court had to determine whether the insurance policy underwritten by USF&G entitled A&E to coverage. The declaratory judgment action did not involve A&E's liability to the plaintiffs and was, therefore, completely independent of the plaintiffs' right to recover from A&E for injuries incurred.

■ The plaintiffs also argue that the doctrine of collateral estoppel barred USF&G from litigating the completed operations issue in the declaratory judgment proceeding. We disagree. Collateral estoppel "bars a party to a prior action, or a person in privity with such a party, from relitigating any issue or fact *actually litigated* and determined in the prior action." *Daigle v. City of Portsmouth*, 129 N.H. 561, 570, 534 A.2d 689, 693 (1987) (emphasis added). "In the case of a judgment entered by . . . default, none of the issues is actually litigated." RESTATEMENT (SECOND) OF JUDGMENTS § 27, comment *e* at 257 (1980); *see also Caouette v. Town of New Ipswich*, 125 N.H. 547, 557, 484 A.2d 1106, 1113 (1984).

■ We also reject the plaintiffs' argument that the superior court erred in allowing USF&G to file an amended motion for summary judgment. Contrary to the plaintiffs' reading of New Hampshire law, nothing in the summary judgment statute, RSA 491:8-a, or this court's summary judgment jurisprudence significantly limits a trial court from allowing a party to submit an amended motion for summary judgment after the original motion has been denied.

The plaintiffs next argue that the "completed operations hazards" clause was ambiguous and did not apply to the facts of this case. As a

preliminary matter, we must determine whether Massachusetts or New Hampshire law will govern our interpretation of the policy.

■ Our interpretation of insurance policy language is governed by the law of the state that is the "'principal location of the insured risk.'" *Glowski v. Allstate Ins. Co.*, 134 N.H. 196, 198, 589 A.2d 593, 595 (1991) (quoting *Ellis v. Royal Inc. Co.*, 129 N.H. 326, 331, 530 A.2d 303, 306 (1987)); *see also Stevens v. Merchants Mut. Ins. Co.*, 135 N.H. 26, 28, 599 A.2d 490, 491 (1991). In this case, Sandhill, Marston's employer, was located in New Hampshire, and the injury therefore arose in New Hampshire. A&E, however, was located in Ashby, Massachusetts.

■ We find that Massachusetts was the "principal location of the insured risk." The insurance policy was intended to insure A&E, rather than its customers, from liability. Additionally, the "completed operations hazards" clause, which precludes coverage when "operations have been completed" and when the injury "occurs away from premises owned by or rented to [A&E]," ensures that in the great majority of instances in which A&E is covered, liability will have arisen in Massachusetts.

■ Under Massachusetts law, the superior court did not err in finding the "completed operations hazards" clause to be unambiguous. In 1976, the Supreme Judicial Court of Massachusetts held that an identical provision was not ambiguous. *See Ronald Bouchard, Inc. v. Hartford Acc. & Indem. Co.*, 369 Mass. 846, 849, 343 N.E.2d 372, 374 (1976).

■ Nor did the superior court err in applying the "completed operations hazards" clause to the facts in this case. The plaintiffs argue that A&E's operations were not completed at the time of the injury because the forklift was defective and A&E had a continuing duty to maintain the forklift. The superior court disagreed:

> "Viewed in the light most favorable to Mr. Marston, the Court finds that A&E Forklift did not have a continuing duty to maintain the forklift because the 'operation' as defined in the policy had at the time of injury, been completed. Mr. Robinson in his affidavit states that A&E Forklift did not agree to provide maintenance on an ongoing basis to Sandhill Warehouse Wholesale after it sold the forklift, that it had no maintenance contract with it, and that when it completed the necessary maintenance work it had no obligation to perform additional work. Mr. Robinson's position is sup-

ported by the definition of the term 'completed operations hazard,' which provides that operations that require maintenance work because of a defect but which are otherwise completed are deemed to be completed. The operation was completed when the forklift was put into operation in its intended use, shortly after delivery to Sandhill Warehouse Wholesale and before the date of the injury.

Mr. Marston does not dispute that no maintenance contract existed; nor does he dispute that from August 1, 1982 until October 6, 1982, the date of the accident, the forklift had been put to its intended use. According to discovery documents, Mr. Marston responded to an interrogatory that he and others plugged the forklift into a charger every night so it would be charged and ready to use the next day. He stated in response to other interrogatories that the forklift was used to unload and put away stock, and that he did not claim that the forklift was inadequate for its normal purpose[s] or uses. Since the forklift had been put to its intended use before the accident occurred, the operation was completed as so defined in the insurance policy. Because completed operations hazards were expressly excluded from coverage, the Court finds that USF&G does not have a duty to defend A&E Forklift in the underlying action or to indemnify it for any judgment."

We agree with the superior court. Its interpretation of the "completed operations hazards" clause is consistent with the plain meaning of the provision's language.

*Affirmed.*

BROCK, C.J., did not sit; the others concurred.