Merrimack
No. 91-511

WHITE MOUNTAIN CABLE CONSTRUCTION CORP.

v.

TRANSAMERICA INSURANCE COMPANY

July 30, 1993

*Perkins, Phillips & Waters, P.A.*, of Concord (*Edmund J. Waters, Jr.*, on the brief and orally), for the plaintiff.

*Hamblett & Kerrigan, P.A.*, of Nashua (*Joseph M. Kerrigan* on the brief), and *Law Offices Allan D. Windt*, of Philadelphia, Pennsylvania (*Allan D. Windt* on the brief and orally), for the defendant.

*Ransmeier & Spellman, P.C.*, of Concord (*Garry R. Lane* on the brief and orally), for the intervenor Cablevision Service Company.

HORTON, J. The defendant appeals a decision of the Superior Court (*Dunn*, J.) granting the plaintiff's motion for summary judgment, which required the defendant to indemnify and defend the plaintiff in an action for personal injuries. We affirm.

In January 1983, the intervenor, Cablevision Service Company (Cablevision), contracted with Public Service Company of New Hampshire (PSNH) and New England Telephone and Telegraph (NET) to use their jointly owned telephone poles to carry television cables to several communities in New Hampshire. This contract required Cablevision to indemnify and defend PSNH and NET for any liability that arose as a result of the cable installation.

In March 1983, Cablevision contracted with the plaintiff, White Mountain Cable Construction Co., to install the television cables on the PSNH and NET poles. The contract required the plaintiff to acquire general liability insurance, with both White Mountain and Cablevision as named insureds and loss payees, protecting the parties against liability arising from bodily injuries occurring during the work on the television cables and against a variety of other risks. White Mountain failed to include Cablevision as a named insured and loss payee as required by the contract.

In May 1983, the plaintiff's employee, Norman Tremblay, while installing television cable, received an electric shock from one of the PSNH and NET power lines. The shock caused him to fall to the ground, resulting in serious back injury and paraplegia. In June 1986, Tremblay brought separate suits against PSNH and NET. These suits were subsequently consolidated into one action. Cablevision, after being sued for indemnity by PSNH and NET, assumed the defense in the Tremblay action.

During the same period, in early August 1986, the plaintiff corresponded with the defendant, Transamerica Insurance Company, expressing its belief that the defendant had a duty to indemnify Cablevision. The plaintiff stated, in effect, that its contractual obligation to indemnify Cablevision brought the Tremblay claim under the general liability policy issued by the defendant. It asked the defendant to enter an appearance in the Tremblay action. The defend-

ant refused, notifying the plaintiff in February 1987 that it would not do so because it found no pending litigation against its named insured, the plaintiff, although it was aware of the claims for indemnification running between PSNH, Cablevision, and the plaintiff.

In July 1987, the plaintiff filed the declaratory judgment action that forms the basis for this appeal, seeking indemnification and defense from the defendant under the terms of the insurance contract.

In February 1988, Cablevision sued the plaintiff seeking to enforce the indemnity provisions, both express and implied, in their contract. Although copies of the pleadings in the Cablevision action may not have been provided to the defendant, the defendant had actual notice of the action by July 1988 when it wrote to the plaintiff requesting copies of the pleadings in the Cablevision action.

In July 1989, while the indemnity case between Cablevision and the plaintiff was still pending, the plaintiff moved for summary judgment in its declaratory judgment action against the defendant. The Superior Court (*Dunn*, J.) denied the motion. The court stated that the judicial outcome of the pending indemnity case was crucial to its decision.

In March 1990, Cablevision moved for summary judgment against the plaintiff in its action on the indemnity issues. The plaintiff failed to object, and the Superior Court (*Murphy*, J.) entered a default judgment in favor of Cablevision. Two years later, in March 1992, the defendant insurance company entered into a stipulation with Cablevision and White Mountain to intervene for the purposes of modifying the default judgment. Concerned that the court's order could be read as a decision based on factual findings, the defendant asked the court to modify its order to clarify that it had made no findings of fact. At no time did the defendant insurance company attempt to otherwise modify or vacate the order.

In January 1991, the plaintiff renewed its motion for summary judgment in the declaratory judgment action underlying this appeal. After a hearing, the trial court granted the motion. Relying on the doctrine of collateral estoppel, the trial court found that the issue of the plaintiff's duty to indemnify Cablevision was determined by the default judgment in the indemnity action. Having thus found that the plaintiff had a duty to defend and indemnify Cablevision, the court held that the plaintiff's insurance policy provided coverage for liability assumed under an incidental contract. The court concluded that the indemnification contract at issue is an incidental contract, which the policy defines as "any contract or agreement relating to the conduct of the named insured's business."

The defendant appeals, arguing that the contract between Cablevision and the plaintiff created no duty to indemnify, express or implied. Further, the defendant argues it was entitled to litigate the indemnity issue in this action, arguing, *inter alia*, that collateral estoppel does not apply because the defendant had no duty to defend the plaintiff in the Cablevision action, the defendant's interests in the Cablevision action were adverse to those of the plaintiff, and the judgment in the Cablevision action was a default judgment.

The linchpin to the parties' dispute is whether the defendant had a duty to defend the plaintiff in the Cablevision action. We hold that the defendant had such a duty, and its failure to do so was a breach of that duty. The defendant, having breached its duty, is bound by the judgment in the indemnity action.

We start our analysis with the defendant's duty to defend the plaintiff in the Cablevision action. In New Hampshire, it is well-settled

> "that an insurer's obligation to defend its insured is determined by whether the cause of action against the insured alleges sufficient facts in the pleadings to bring it within the express terms of the policy, even though the suit may eventually be found to be without merit. The duty of an insurer to defend is not necessarily coextensive with its duty to pay."

*U.S. Fidelity & Guaranty Co., Inc. v. Johnson Shoes, Inc.*, 123 N.H. 148, 151–52, 461 A.2d 85, 87 (1983) (citation omitted). The duty to defend is triggered even where the complaint contains several causes of action or theories of recovery, *see Aetna Cas. and Sur. v. Prestige Cas. Co.*, 195 Ill. App. 3d 660, 664, 553 N.E.2d 39, 41 (1990), but the insurer's duty to defend extends only to those causes of action that would fall under the policy if they were proved true. 14 M. RHODES, COUCH ON INSURANCE 2d § 51:47, at 482 (rev. ed. 1982). Count II of the Cablevision writ fulfills these requirements. It alleges there was a contract between the plaintiff and Cablevision and outlines the Tremblay accident. It outlines the flow of liability from PSNH and NET to Cablevision, and then from Cablevision to White Mountain by way of their contract. It alleges that the plaintiff was contractually bound, both expressly and implicitly, to defend Cablevision in the Tremblay action. The purpose of the count was to determine whether an indemnity contract existed between the plaintiff and Cablevision.

■ The defendant concedes on appeal that if an indemnity contract existed between the plaintiff and Cablevision, then it would lose this action. It would, therefore, be bound to provide the plaintiff with insurance coverage for liability arising under the indemnity contract. The defendant's concession impliedly acknowledges that the facts in Count II state a cause of action that falls under the express coverage of the policy. The defendant, therefore, had a duty to defend the plaintiff in the Cablevision action.

The defendant argues that it had no duty to defend the plaintiff because the plaintiff never tendered the defense to the defendant. The defendant points to numerous cases where the insurer had no duty to defend because the insured failed to request a defense. *See Time Oil Co. v. CIGNA Property & Cas. Ins. Co.,* 743 F. Supp. 1400, 1420 (W.D. Wash. 1990); *Forum Ins. Co. v. Ranger Ins. Co.,* 711 F. Supp. 909, 911–12 (N.D. Ill. 1989); *Manny v. Estate of Anderson,* 117 Ariz. 548, 550, 574 P.2d 36, 38 (1977); *American Mutual v. Mich. Mutual,* 64 Mich. App. 315, 323, 235 N.W.2d 769, 774 (1975). There are, however, two countervailing positions. Some courts have adopted a two-part test to determine when an insurer has a duty to defend. Such States require the insurer to know not only that the suit is potentially within the policy's coverage, but also that the insured desires the insurer's assistance. *See Hartford Acc. and Indemn. Co. v. Gulf Ins. Co.,* 766 F.2d 1380, 1383 (7th Cir. 1985).

■ The second countervailing position, and the one we believe is the best approach, is outlined by counsel for the defendant in his learned treatise. As he states, many courts have held that "[t]he insured need only put the insurer on notice of the claim, thereby at least implicitly tendering the defense." A. WINDT, INSURANCE CLAIMS AND DISPUTES § 4.01, at 128–29 (2d ed. 1988). Such an approach discourages the insurer, usually in a position of superior bargaining power, from defaulting in the performance of its duty to defend. Further, it puts the burden of ensuring clear communication between the insurer and insured on the insurer, who is better positioned, in terms of expertise and resources, to manage such a task. We hold, therefore, that in order for an insured to tender the defense to the insurer, it need only put the insurer on notice of the claim. The insured having done so, and assuming the claim falls within the terms of the policy, the insurer will have a duty to defend.

■ We recognize that there will be special circumstances where the actions of the insured will negate the insurer's duty to defend.

Examples of such circumstances are when an insured refuses to sign a reservation of rights agreement, when an insured properly tenders the defense of a case to another co-insurer or primary insurer, *City of West Haven v. Liberty Mut. Ins. Co.*, 639 F. Supp. 1012, 1019 (D.Conn. 1986), or when an insured fails to follow the contractual notice requirements. *Cf. Jostens, Inc. v. CNA Ins./Continental Cas.*, 403 N.W.2d 625, 629 (Minn. 1987) (notice is affirmative defense to duty to defend and indemnify).

■ Turning to the facts of the instant action, we find that the defendant had appropriate notice of the action against the plaintiff. The pleadings in the instant action outlined Cablevision's claims against the plaintiff in the indemnity action. The defendant knew of the Cablevision action in July 1988 when it requested, through its counsel, a copy of the pleadings in that case. Although defendant's counsel contends in an affidavit dated July 29, 1991, that the plaintiff never responded to his request, the defendant's pleadings demonstrate that the defendant was familiar with the contents of the Cablevision pleadings as of July 1989. The defendant, in its objection to the plaintiff's first motion for summary judgment, alleged that it had "recently checked" the Cablevision pleadings and "through [its] knowledge" was familiar with the nature of the pleadings. Further, the defendant was on notice of the significance of the Cablevision action to the instant action because the court, when denying the plaintiff's original motion for summary judgment, stated that the ruling in the Cablevision case was crucial to the resolution of this case.

■ The defendant contends that it could not have assumed the defense in the indemnity action because its interests conflicted with those of the plaintiff. As explained below, such a conflict does not dissolve the duty to defend, it only affects the binding nature of a judgment. The defendant also contends that the plaintiff breached its contractual duty to provide notice of the Cablevision action. As explained above, such is not the case. *See also Jostens Inc.*, 403 N.W.2d at 629 (contractual duty of providing immediate notice satisfied when notice is reasonably prompt).

■ We turn now to the issue of whether the defendant, having breached its duty to defend, is bound by the default judgment in the Cablevision action. The plaintiff argues that collateral estoppel bars the defendant from relitigating whether there was an indemnification agreement between the plaintiff and Cablevision. Although we

agree with the plaintiff that the defendant is bound by the decision, we disagree that the defendant is barred by the doctrine of collateral estoppel. The judgment in the Cablevision action was a default judgment and no issues or facts were actually litigated. "Collateral estoppel bars a party to a prior action, or a person in privity with such a party, from relitigating any issue or fact *actually litigated* and determined in the prior action." *Marston v. U.S. Fidelity & Guaranty Co.*, 135 N.H. 706, 710, 609 A.2d 745, 748 (1992) (quotation omitted). Collateral estoppel would apply only if the parties in the Cablevision action had litigated the issue of indemnification.

▮▮ The plaintiffs are correct, however, that the defendant is bound by the decision in the Cablevision action. In *Howe v. Howe*, 87 N.H. 338, 339, 179 A. 362, 363 (1935), this court held that a final judgment, even by default, made by a court of competent jurisdiction, is conclusive upon an insurer disclaiming coverage and refusing to defend when it had a duty to do so. Although the court in *Howe* described this doctrine as res judicata, it is in the nature of equitable estoppel. The doctrine as applied to insurers is *sui generis* to indemnity law, *see* RESTATEMENT (SECOND) OF JUDGMENTS § 58 illus. 1, at 92 (1982), being based on the relationship between the insurer and the insured.

> "[If the indemnitor fails to give assistance] at the time when it is of greatest importance, it is fair that he should abide by the result of the trial. The fact that it may be inconvenient to him to respond at the time when the indemnitee is sued does not change the equities of the situation, because of his primary duty to satisfy the claim of the creditor or the injured person; if he permits the matter to result in an action his should be the responsibility to see that it does not result in an improper judgment."

*Litton Systems, Inc. v. Shaw's Sales & Serv., Ltd.*, 119 Ariz. 10, 13, 579 P.2d 48, 51 (Ariz. Ct. App. 1978) (quotation omitted).

In *Howe*, the insured defaulted in an action determining his liability. The plaintiff subsequently brought a bill in equity against the insurer, attempting to receive payment for damages awarded as part of the default judgment. The insurance company attempted to interpose a defense of contributory negligence, hoping to eliminate the insured's liability and consequently its own. This court held that the insurance company was bound by the default judgment because it disclaimed coverage when it should have defended the action. *See*

*Howe*, 87 N.H. at 339, 179 A. at 363. The equities of the situation demanded that the insurer be bound by the default judgment because it was a party "directly interested in the subject-matter in issue, who [had] a right to make defence, control the proceedings, or appeal from the judgment," *Morin v. Insurance Co.*, 85 N.H. 471, 472, 160 A. 482, 483 (1932) (quotation omitted).

More recently, in *Marston v. U.S. Fidelity & Guaranty Co.*, this court addressed the counterpart to *Howe*. An insurer disclaimed coverage related to a personal injury claim, declining to defend its insured. The insured defaulted, and the injured parties brought a declaratory judgment action against the insurer to determine coverage under the insured's policy. The injured parties contended that the insurer was barred from relitigating the issue of contractual coverage, asserting the issue had been determined by the default judgment in the underlying tort action. This court held that the insurer was entitled to litigate the issue of coverage. *Marston*, 135 N.H. at 710, 609 A.2d at 748. The court held that the only issue determined by the default judgment was the insured's liability. *Id.*

The difference between *Howe* and *Marston* is that the insurer's defenses to coverage in *Marston* bore no relationship to the cause of action in the underlying action establishing liability. In contrast, the insurer in *Howe*, as a defense to coverage, attempted to raise an issue that could have properly been litigated in the prior action.

The defendant's situation in the instant case is like that of the insurance company in *Howe*. Like the insurer in *Howe*, the defendant desires to relitigate issues that could have been litigated in the action determining the liability of its insured. The defendant insurance company hopes to avoid liability by contending that the plaintiff's contract with Cablevision contains no indemnity provision, express or implied. The issue of indemnity, however, was the central issue in the Cablevision action, and the defendant, having breached its duty to defend, is bound by the outcome of the Cablevision action.

The defendant asserts that it cannot be bound by the default judgment because the plaintiff and Cablevision colluded by structuring their lawsuit contrary to the merits of the matter in an attempt to create coverage where it did not exist. An examination of the record reveals nothing to substantiate this claim. The Cablevision writ, in addition to the allegations already described, also alleges the plaintiff's breach of contract and negligent performance of contract.

Given the parties' situations, all the claims in the writ are reasonable and appropriate. Further, the insurance policy provided the defendant with the right to control the defense of any action brought against the plaintiff. Insurers retain the right to control a defense in large part to avoid collusion between the insured and third parties. *See* 7C J. APPLEMAN, INSURANCE LAW AND PRACTICE § 4681, at 2–3 (Berdal ed. 1979). The defendant had full knowledge of the structure of the lawsuit and made no effort to take part in the proceeding. If, after failing to control the defense, the defendant thought the judgment was collusive, then its proper avenue of attack was to move to vacate or modify the Cablevision judgment. An insurer may not plead fraud invalidating a judgment except "by [a] direct proceeding to have the judgment vacated." *Bosse v. Insurance Co.*, 88 N.H. 440, 442, 190 A. 715, 717 (1937). The defendant clearly had the opportunity to make a direct attack on the Cablevision judgment because it successfully moved for a minor modification of the order. It cannot now collaterally attack the judgment as fraudulently obtained.

 The defendant next maintains that its interests in the Cablevision action were in conflict with those of the plaintiff. This conflict, argues the defendant, both prevented it from controlling the plaintiff's defense and destroyed the privity between the plaintiff and defendant. The defendant is correct to the extent that if there was a conflict of interest, it could not control the plaintiff's defense. Controlling the defense, however, is not synonymous with providing a defense. Having a duty to defend, and faced with a conflict of interest, the defendant could have hired independent counsel to defend the plaintiff while intervening on its own behalf. In the alternative, the defendant could have provided the defense but reserved its right to later deny coverage. *See* 14 M. RHODES, COUCH ON INSURANCE 2D § 51:92, at 593 (rev. ed. 1982).

 The defendant argues that the default judgment in the Cablevision action created an indemnity agreement where one did not previously exist. It concludes that the indemnity agreement somehow arose simultaneously with the default judgment and, therefore, took effect subsequent to the Tremblay injury. The defendant notes that the insurance policy excludes coverage for liability assumed by way of a contract arising after an injury has occurred. The defendant, therefore, concludes that even if the default judgment is binding upon it, there will be no coverage under the policy. The judgment in the Cablevision case, however, determined only the nature of the

contract between Cablevision and the plaintiff. The terms of a contractual agreement determine its effective dates, not the date of the court order interpreting such terms.

We need not reach the defendant's claim that the plaintiff's contract with Cablevision did not contain an indemnity provision. This issue was resolved by the judgment in the Cablevision action.

In summary, we find that the defendant had a duty to defend the plaintiff in the Cablevision action and is bound by the default judgment in that action. Accordingly, we affirm.

*Affirmed.*

All concurred.