EKCO Group v. Travelers Indemnity Co. CV-99-236-JD   11/29/00
UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


EKCO Group, Inc. and
EKCO Housewares, Inc.

    v.                                    Civil No. 99-236-JD
                                         Opinion No. 2000 DNH 249

Travelers Indemnity Co.
of Illinois


O R D E R


The plaintiffs, EKCO Group, Inc. and EKCO Housewares, Inc.
("EKCO"), filed a petition for a declaratory judgment in state
court that was removed to this court by the defendant, Travelers
Indemnity Co. of Illinois ("Travelers").  EKCO seeks a
declaratory judgment that Travelers is obligated under the terms
of its commercial general liability insurance policies to provide
coverage for EKCO's costs of defense and liability, resulting
from a lawsuit brought against EKCO in the United States District
Court for the Southern District of Texas.  Travelers disputes
coverage, and the parties both move for summary judgment.

Standard of Review

Summary judgment is appropriate when "the pleadings,
depositions, answers to interrogatories, and admissions on file,
together with the affidavits, if any, show that there is no
genuine issue as to any material fact and that the moving party

is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  An issue is genuine if the factual controversy is "sufficiently open-ended to permit a rational factfinder to resolve the issue in favor of either side," and the issue is material if it "might affect the outcome of the suit under the governing law."  Allstate Ins. Co. v. Occidental Int'l, Inc., 140 F.3d 1, 2 (1st Cir. 1998).  On cross motions for summary judgment, the party who bears the burden of proof at trial "loses if he cannot produce evidence tending to establish a fact, under the governing law, [which that party] is required to prove in order to make out his cause of action [or defense]."  Wigginton v. Centracchio, 205 F.3d 504, 517 (1st Cir. 2000).

## Background

EKCO Housewares, Inc. is a subsidiary of EKCO Group, Inc. and is a manufacturer and marketer of metal bakeware and a marketer of kitchenware.  EKCO sold its metal tea kettles through K-Mart Corporation stores.  Chantal Cookware Corporation of Houston, Texas, filed a lawsuit in the United States District Court for the Southern District of Texas, Houston Division, against EKCO, and others, alleging trade dress infringement, unfair competition, and patent infringement.

At all relevant times, EKCO was insured under commercial

2

general liability policies issued by Travelers, which contain the same policy terms. The policies include coverage for "advertising injury," which is defined in the policies. The policies also include exclusions barring coverage for claims of breach of contract and for claims in which the insured made a publication with knowledge of its falsity.

EKCO first became aware of Chantal's claims against it on May 4, 1998, and it was served with the complaint on May 18, 1998. EKCO notified Travelers of the suit on October 28, 1998, and Travelers received a copy of the complaint on October 30, 1998. Travelers notified EKCO by letter on January 21, 1999, that the applicable policies did not cover the Chantal suit, and reiterated its position by letter dated March 29, 1999.

Chantal filed a third amended complaint in April of 1999. In the third amended complaint, Chantal alleged claims of trade dress infringement and unfair competition, under both the Lanham Act and state common law, and design patent infringement.[1] Chantal alleged that its tea kettle trade dress was "comprised of nonfunctional, arbitrary, fanciful and distinctive components" including "the image, overall appearance, visual impression,

---

[1]Travelers originally denied coverage based upon Chantal's second amended complaint. The third amended complaint superseded the second in April of 1999. The third amended complaint is the pertinent complaint for purposes of deciding coverage issues.

3

finish, size, shape, contour, fixtures, placement and shape of components, texture, materials and/or combinations of materials, color and/or color combinations of the tea kettles and packaging designed, produced, marketed, promoted and sold by Chantal." 3d Am. Compl. ¶ 6. Chantal also alleged that "[t]he trade dress embodied in the tea kettle has become the symbol of Chantal as a company" and that "the tea kettle trade dress has been extensively and strategically promoted through various media channels." Id. ¶¶ 6, 7.

Chantal alleged that EKCO infringed Chantal's tea kettle trade dress by EKCO's "development, production, importation, sales and offers to sell" the EKCO tea kettle. Id. ¶ 8. Chantal alleged injury as a result of EKCO's infringement caused by customer and retailer confusion between its tea kettles and those made by EKCO that damaged Chantal's reputation and caused Chantal to lose market share and profits. Id. ¶ 10. In addition, Chantal sought enhanced damages under the Lanham Act based on allegations that EKCO "deliberately copied and misappropriated Chantal's trade dress." Id. ¶ 12.

With respect to the design patent infringement claim, Chantal alleged that EKCO infringed its patent on the design of its kettle by "utilizing or practicing the invention, and by producing, importing, offering to sell and selling the infringing

4

tea kettles." Id. ¶ 15. Chantal also alleged that EKCO contributorily infringed and induced others to infringe the patented tea kettle design. See id. EKCO's infringing kettles, Chantal alleged, "misappropriate the distinctive, non-functional and ornamental features" claimed in Chantal's patent. Id. ¶ 19. The design similarity between the kettles "is such that the ordinary observer is deceived by the appearance of the kettles manufactured and sold" by EKCO. Id. ¶ 20. Chantal further alleged that EKCO's infringement caused it economic harm. See id. ¶ 17.

EKCO brought the present declaratory judgment action against Travelers in state court in April of 1999, and Travelers removed the suit to this court on May 27, 1999. The Chantal suit was settled in November of 1999.

## Discussion

EKCO contends that Travelers is obligated under the advertising injury provisions of the applicable policies to pay for the costs of EKCO's defense in the Chantal suit and to indemnify EKCO for the amount of the settlement with Chantal, up to the policy limits. Travelers contends that the underlying claims from the Chantal suit are not covered by the policies' provision for advertising injury and that coverage is barred by

5

the policies' breach of contract and knowledge of falsity exclusions. In addition, Travelers argues that coverage is excluded because EKCO breached a condition precedent to receiving coverage by not providing Travelers with timely notice of the claims brought by Chantal.

A. <u>Choice of Law</u>

EKCO asserts that the New Hampshire choice-of-law provisions require that the law of Illinois be applied in deciding this case. EKCO states, however, that the "legal outcome in this case would be the same even if this Court were to apply New Hampshire or Texas substantive law." Pl. Mem. at 5 n.3. Travelers contends that New Hampshire law applies because no conflict exists between the applicable substantive law of New Hampshire and Illinois.

Generally, a federal court sitting in diversity jurisdiction applies the substantive law of the forum state and federal procedural rules. <u>See</u> 28 U.S.C.A. § 2071; <u>Erie R. Co. v. Tompkins</u>, 304 U.S. 64, 78 (1938). As a result, the court applies the choice-of-law principles of the forum state to determine which state's substantive law to apply. <u>See</u> <u>Klaxon Co. v. Stentor Elec. Mfg. Co.</u>, 313 U.S. 487, 496-97 (1941). Under New Hampshire choice-of-law principles, when more than one state may

6

have an interest in the suit and the choice involves substantive law, the court must first decide whether New Hampshire law actually conflicts with the laws of the other interested states. See Keeton v. Hustler Magazine, Inc., 131 N.H. 6, 13 (1988). Since the parties concur that no actual conflict exists as to the law of the interested states, no further analysis is required. New Hampshire substantive law will be applied in this case.

Because EKCO brought its declaratory judgment action in state court under the New Hampshire declaratory judgment statute, N.H. Rev. Stat. Ann. § ("RSA") RSA 491:22, following removal based on diversity jurisdiction, RSA 491:22, rather than the federal declaratory judgment statute, applies here. See RSA 491:22(III); EnergyNorth Natural Gas v. Associated Elec. & Gas, 21 F. Supp. 2d 89, 90-92 (D.N.H. 1998). "In any petition under RSA 491:22 to determine the coverage of a liability insurance policy, the burden of proof concerning the coverage shall be upon the insurer whether he institutes the petition or whether the claimant asserting the coverage institutes the petition." RSA 491:22-a. Therefore, in this case, Travelers bears the burden of proving that the applicable policies do not provide coverage.

B.  Traveler's Duty to Defend[2]

   "It is well-settled law in New Hampshire that an insurer's obligation to defend its insured is determined by whether the cause of action against the insured alleges sufficient facts in the pleadings to bring it within the express terms of the policy, even though the suit may eventually be found to be without merit."  United States Fid. & Guar. Co., Inc. v. Johnson Shoes, Inc., 123 N.H. 148, 151-52 (1983).  If the insurer breached its duty to defend, "the insurer must reimburse the insured for the costs incurred by the insured in defending the claim."  Concord Hosp. v. N.H. Med. Malpractice Joint Underwriting Assoc., 142 N.H. 59, 61 (1997).  To determine the scope of coverage, the allegations in the underlying suit must be compared to the policy provisions.  See A.B.C. Builders, Inc. v. Am. Mut. Ins. Co., 139 N.H. 745, 749 (1995).

   The interpretation of an insurance contract is a question of law.  See Bianco Prof'l Ass'n v. Home Ins. Co., 740 A.2d 1051, 1055 (N.H. 1999).  If a term is not defined in the policy, the term is to be given its plain and ordinary meaning, construed "as

_____

   [2]Under New Hampshire law, an insurer's duties to defend and to indemnify its insured are separate obligations.  See Happy House Amusement, Inc. v. N.H. Ins. Co., 135 N.H. 719, 721 (1992).  Therefore, the two obligations are addressed separately.

would a reasonable person in the position of the insured based on more than a casual reading of the policy as a whole." High Country Assocs. v. N.H. Ins. Co., 139 N.H. 39, 41 (1994). Because an insurance company may limit its liability through clear and unambiguous policy language, ambiguous terms will be construed in favor of the reasonable expectations of the insured. See A.B.C. Builders, 139 N.H. at 748. "If more than one reasonable interpretation is possible, and an interpretation provides coverage, the policy contains an ambiguity and will be construed against the insurer." Fed. Bake Shop v. Farmington Cas. Co., 736 A.2d 459, 460 (N.H. 1999).

In considering the allegations in the underlying complaint, the court is not bound by the language used, but instead must decide whether "by any reasonable intendment of the pleadings liability of the insured can be inferred." Green Mountain Ins. Co. v. Foreman, 138 N.H. 440, 443 (1994). "When the alleged facts do not clearly preclude an insurer's liability, inquiry may proceed into underlying facts . . . to avoid permitting the pleading strategies, whims, and vagaries of third party claimants to control the rights of parties to an insurance contract." M. Mooney Corp. v. United States Fid. & Guar. Co., 136 N.H. 463, 469 (1992). An insurer's duty to defend arises if claims are alleged in the underlying complaint that if proved true would be covered

by the policy, even if other claims in the underlying complaint would not be covered.  See White Mountain Cable Constr. Co. v. Transamerica Ins., 137 N.H. 478, 482 (1993); see also Titan Holdings Syndicate v. City of Keene, 898 F.2d 265, 269 (1st Cir. 1990) (construing New Hampshire law).  Doubt as to the scope of the policy's coverage is to be resolved in favor of the insured. See Green Mountain, 138 N.H. at 443.

The coverage dispute in this case arises from the policy provision that Travelers "will pay those sums that the insured becomes legally obligated to pay as damages because of . . . 'advertising injury.'"  The policy applies to "'[a]dvertising injury' caused by an offense committed in the course of advertising your goods, products or services."  "Advertising injury" is defined in pertinent part in the policy to mean "[m]isappropriation of advertising ideas or style of doing business."[3]  The terms used in the definition are not further

_____

[3]The policy provides the following definitions of "advertising injury":

> "Advertising injury means injury arising out of one or more of the following offenses:
> a.  Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
> b.  Oral or written publication of material that

defined in the policy.

The New Hampshire Supreme Court has not construed the insurance term "advertising injury" or the definition of "advertising injury" included in the Travelers policy. Another judge in this court has previously held that an insured's use of an allegedly infringing trademark in its product packaging, literature, and advertising was a covered advertising injury because it "arguably falls within the ambit of misappropriation of advertising ideas or style of doing business or infringement of title or slogan." See P.J. Noyes v. Am. Motorists Ins. Co., 855 F. Supp. 492, 494-95 (D.N.H. 1994). The parties in this case dispute: (1) whether "advertising injury," as used in the Travelers policy, covers the underlying allegations of trade dress infringement, unfair competition, and design patent infringement, and if so, (2) whether the alleged "advertising injury" was caused by an offense committed in the course of advertising the allegedly infringing tea kettles.

---

        violates a person's right of privacy;
        c.  Misappropriation of advertising ideas or style of
        doing business; or
        d.  Infringement of copyright, title or slogan.

Policy, Section V-Definitions, 1.

11

### 1. Trade dress infringement and unfair competition.

#### a. "Advertising injury."

EKCO claims coverage under the definition of advertising injury as a "misappropriation of advertising ideas or style of doing business," and Travelers denies that coverage exists under that definition.[4] Other courts disagree as to whether claims of trade dress infringement are advertising injury as covered by the misappropriation definition.[5] See, e.g., Novell, Inc. v. Fed. Ins. Co., 141 F.3d 983, 987 (10th Cir. 1998) (citing cases pertaining to coverage for trade dress infringement). Travelers relies heavily on the Sixth Circuit's decision in Advance Watch Co., Ltd. v. Kemper Nat'l Ins. Co., 99 F.3d 795 (6th Cir. 1996), in which that circuit, applying Michigan law, interpreted substantially similar policy terms not to cover underlying claims of trade dress and trademark infringement. See id. at 802. EKCO discounts the analysis in Advance Watch, citing numerous cases

---

[4]The Travelers's policies in question apparently follow the 1986 Insurance Services Office, Inc. form for commercial general liability policies.

[5]The allegations in the underlying complaint do not distinguish between claims of trade dress infringement and unfair competition. Since the parties do not make arguments based on differences in the claims, the court will address them together as a claim for trade dress infringement. See 15 U.S.C.A. § 1127.

that disagree with Advance Watch.

The Sixth Circuit's analysis of "advertising injury" in Advance Watch "has been sharply criticized for ignoring the real contours of intellectual property litigation." Frog, Switch & Mfg. Co., Inc. v. Travelers Ins. Co., 193 F.3d 742, 747 (3d Cir. 1999); but see Callas Enters. v. Travelers Indem. Co., 193 F.3d 952, 956 (8th Cir. 1999) (following Advance Watch in an alternative holding). In addition, courts have criticized Advance Watch for limiting the scope of "advertising injury" to the narrow legal meaning of "misappropriation," rather than affording a broader interpretation based on the plain and ordinary meaning of the term and the reasonable expectations of the insured. See Frog, Switch, 193 F.3d at 747; Bay Elec. Supply, Inc. v. Travelers Lloyds Ins. Co., 61 F. Supp. 2d 611, 616-17 (S.D. Tex. 1999); Am. Employers' Ins. Co. v. DeLorme Pub. Co., 39 F. Supp. 2d 64, 75-76 (D. Me. 1999); Indus. Molding v. Am. Mfrs. Mut. Ins. Co., 17 F. Supp. 2d 633, 639, vacated following settlement, 22 F. Supp. 2d 569 (N.D. Tex. 1998); Am. States Ins. Co. v. Hayes Specialties, Inc., 1998 WL 1740968, at *3 (Mich. Cir. Ct. 1998) ("the analysis and reasoning of the Sixth Circuit is not only unpersuasive and flawed, but demonstrates a lamentable lack of understanding and grasp of the law of trademark/trade dress, and ultimately lead [sic] to an

13

unduly narrow holding and somewhat bizarre and tortured application of Michigan insurance law."). The Eighth Circuit's analysis in Callas, following Advance Watch, has been rejected for similar reasons. See Am. Simmental Ass'n v. Coregis Ins. Co., 190 F.R.D. 640, 641 (D. Neb. 2000); Allou Health & Beauty Care, Inc. v. Aetna Cas. & Surety Co., 703 N.Y.S.2d 253, 755 (N.Y. App. Div. 2000).

The narrow interpretation of the misappropriation definition used in Advance Watch appears to conflict with the New Hampshire standard for interpreting insurance policies which gives undefined terms their plain and ordinary meaning and interprets policy provisions in light of the reasonable expectations of the insured. See High Country, 139 N.H. at 41; see also Fed. Bake Shop, 736 A.2d at 461. The Advance Watch analysis is therefore not persuasive in this case.

Many courts have concluded that claims of Lanham Act violations, trademark and trade dress infringement, are consonant with misappropriation of style of doing business.[6] See, e.g., Novell, 141 F.3d at 987 (citing cases); Bay Elec., 61 F. Supp. 2d at 161 (same); Am. Employers', 39 F. Supp. 2d at 77 (holding

---

[6]Courts generally have not differentiated between Lanham Act claims for trade dress and trademark infringement in the context of interpreting "advertising injury."

14

"advertising injury" included trademark infringement as style of doing business and citing cases). Due to the variety of reasonable interpretations of the misappropriation definition of "advertising injury" demonstrated by the cases discussing and applying the definition in the context of trademark and trade dress claims, "advertising injury" as defined in the Travelers policy is ambiguous in the context of this case. See, e.g., Bay Elec., 61 F. Supp. 2d at 617; Everett Assocs., Inc. v. Transcon. Ins. Co., 57 F. Supp. 2d 874, 880-81 (N.D. Cal. 1999); Winklevoss Consultants, Inc. v. Fed. Ins. Co., 991 F. Supp. 1024, 1037-38 (N.D. Ill. 1998). Under New Hampshire law, an ambiguous insurance provision must be construed in favor of coverage. See Fed. Bake Shop, 736 A.2d at 460.

Travelers nevertheless argues that the misappropriation definition would not apply in this case because trade dress infringement of a single product cannot constitute advertising as a misappropriation of a style of doing business. See, e.g., Frog, Switch, 193 F.3d at 749-50. Chantal alleged in the underlying suit that "[t]he trade dress embodied in the tea kettle has become the symbol of Chantal as a company." 3d Am. Compl. ¶ 6. Misappropriation of the symbol of the company is sufficiently significant to be reasonably understood as misappropriation of the company's style of doing business. See,

15

e.g., Heritage Mut. Ins. Co. v. Adv. Polymer Tech., Inc., 97 F. Supp. 2d 913, 928-29 (S.D. Ind. 2000) (citing cases pertaining to style of business and trade dress); Am. Employers', 39 F. Supp. 2d at 77 (holding that misappropriation of style of doing business included trademark[7] infringement); Owens-Brockway Glass v. Int'l Ins. Co., 884 F. Supp. 363, 369 (E.D. Cal. 1995) ("'style of business' refers to the outward appearance or signature of a business, the sort of claim comprised under trade dress."); cf. Peerless Lighting Corp. v. Am. Motorists Ins. Co., 98 Cal. Rptr. 2d 753, 761 (Cal. Ct. App. 2000) (showing tailor-made product to single customer not advertising); First Bank & Trust Co. v. N.H. Ins. Group, 124 N.H. 417, 418 (1983) (holding representations of banking services made privately to one couple did not constitute advertising).

     b.  Causation.

Having determined that "advertising injury," as defined in the Travelers policy, could apply to a claim for trade dress infringement, the court must determine whether the alleged trade

---

[7]Trademark is defined in part as a manufacturer's symbol used to distinguish its goods. See 15 U.S.C.A. § 1127; see also J.A. Brundage Plumbing & Roto-Rooter, Inc. v. Mass. Bay Ins. Co., 818 F. Supp. 553, 557-58 (W.D.N.Y. 1993), vacated following settlement, 153 F.R.D. 36 (1994).

dress infringement was "caused by an offense committed in the course of advertising [EKCO's] goods, products or services." Policy, Coverage B, 1(b)(2). The policy does not define "advertising" as used in the causation section. An undefined policy term is to be construed according to its plain and ordinary meaning and the reasonable expectations of the insured. See High Country, 139 N.H. at 41. Advertising is usually defined as "the act or practice of calling public attention to one's product, service, need, etc., esp. by paid announcement in newspapers and magazines, over radio or television, on billboards, etc." The Random House Dictionary of the English Language 29 (2d ed. 1983); accord Webster's Ninth New Collegiate Dictionary 59 (1983); Black's Law Dictionary 55 (7th ed. 1999); see also Am. Employers', 39 F. Supp. 2d at 74.

In the underlying complaint, Chantal alleged that EKCO, and others, infringed its tea kettle trade dress by their development, production, and importation of infringing tea kettles, and their sales of, and offers to sell, the kettles. That activity, Chantal alleged, "was designed to cause, and has caused, confusion among consumers as to the source of [EKCO's] products." 3d Am. Compl. ¶ 9. Chantal also alleged that "[c]ustomer and retailer confusion as to the source [of the infringing tea kettles] has caused and has proximately caused

permanent damage to Chantal's reputation and good will, lost tea kettle sales and lost profits, lost market share and substantial devaluation of its tea kettle trade dress." Id. § 10. Chantal, however, did not explicitly allege that infringement occurred in whole or in part as the result of EKCO's "advertising." The question remaining is whether trade dress infringement, as alleged, constitutes "advertising" as an "act or practice of calling public attention to one's product." Random House 29, supra.

Trade dress includes "the design and appearance of a product together with the elements making up the overall image that serves to identify the product presented to the consumer." I.P. Lund Trading ApS v. Kohler Co., 163 F.3d 27, 35 (1st Cir. 1998); see also Pebble Beach Co. v. Tour 18 I Ltd., 155 F.3d 526, 528 (5th Cir. 1998). The purpose of trade dress protection under the Lanham Act is to avoid consumer confusion and to protect producers of distinctive nonfunctional trade dress from infringing use by others. See Wal-Mart Stores, Inc. v. Samara Bros., Inc., 120 S. Ct. 1339, 1342 (2000). A producer of protected trade dress has a cause of action "for the use by any person of 'any word, term, name, symbol, or device, or any combination thereof . . . which . . . is likely to cause confusion . . . as to the origin, sponsorship, or approval of his

18

or her goods . . . .'" Id. (quoting 15 U.S.C.A. § 1125(a)).

Several courts have concluded that because trade dress and trademark infringement claims require proof of consumer confusion, advertising as an activity of calling the public's attention to the infringing product is inherent in a Lanham Act claim.[8]  See, e.g., Am. Employers', 39 F. Supp. 2d at 75; Winklevoss, 991 F. Supp. at 1036 (citing cases); Dogloo, Inc. v. N. Ins. Co. of N.Y., 907 F. Supp. 1383, 1391 (C.D. Cal. 1995). In addition, courts have construed allegations of "marketing" infringing products for the purpose of confusing or deceiving the public to be synonymous with advertising in this context.  See Bay Elec., 61 F. Supp. 2d at 618; Am. Employers', 39 F. Supp. 2d at 75; Indus. Molding, 17 F. Supp. 2d at 640.

Chantal alleged that EKCO's sales of, and offers to sell, its infringing tea kettles were activities that were designed to cause and did cause consumer confusion between EKCO's tea kettles and Chantal's tea kettles.  In order to cause the alleged consumer confusion, EKCO would have had to call attention to the

---

[8]The Sixth Circuit's reasoning in Advance Watch, 99 F.3d at 803, that the common understanding of "advertising" is limited to verbal communication makes little sense in light of the prevalence of graphic advertising through pictures and company symbols (such as, for example, the Nike swoosh, "Joe" Camel, and Microsoft's multi-colored window).  See also, e.g., Indus. Molding, 17 F. Supp. 2d at 639.

appearance or trade dress of its tea kettles.  Therefore, EKCO's trade dress infringement was caused by EKCO's advertising of its tea kettles using the infringing trade dress.

2.  Design patent infringement.

Because Travelers was obligated to provide a defense based on the trade dress infringement claim, it is not necessary to consider whether the design patent infringement claim would also have triggered the same duty.  See White Mountain, 137 N.H. at 482; see also Titan Holdings, 898 F.2d at 269.

3. Exclusions.

Travelers contends that its breach of contract and knowledge of falsity exclusions bar coverage in this case.[9]  To be effective, "the insurer must clearly state the exclusion in conjunction with whatever sections it is intended to modify." Commercial Union Assurance Co. v. Gollan, 118 N.H. 744, 749 (1978).  Further, an exclusion's limitation on coverage must be

_____

[9]Travelers does not cite to the particular exclusions on which it relies.  Lacking pertinent citations, the court assumes that Travelers is referring to the breach of contract exclusion at Coverage B, 2(b)(1), and the knowledge of falsity exclusion at Coverage B, 2(a)(1) as reproduced at exhibit B(1) of EKCO's materials appended to its memorandum in support of summary judgment.

clear.  See Weaver v. Royal Ins. Co., 140 N.H. 780, 782 (1996).  The burden remains on the insurer to show that coverage is not available under the policy.  See RSA 491:22.

The breach of contract exclusion provides in pertinent part: "This insurance does not apply to:  . . . Advertising injury arising out of:  (1) Breach of contract, other than misappropriation of advertising ideas under an implied contract." Policy, Coverage B, 2(b)(1).  Travelers contends that the claims in the third amended complaint arise from EKCO's breach of a confidentiality agreement with Chantal, alleged in that complaint.  Travelers does not cite the specific part of the third amended complaint where the confidentiality agreement is alleged as a basis for any claim, and the court has found no mention of such an agreement in the complaint.  As EKCO correctly points out, neither the trade dress nor the patent infringement claims allege an advertising injury arising from a breach of contract.  Travelers has not shown that the contract exclusion applies to the claims in this case.

The "knowledge of falsity" exclusion provides in pertinent part:  "This insurance does not apply to:  . . . 'advertising injury':  (1) Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity."  Coverage B, 2(a)(1).  Travelers

21

contends that this exclusion applies because Chantal alleged that EKCO sold its tea kettles knowing that the representation of their origin through their design and trade dress was false.

The exclusion appears not to apply in the context of trade dress infringement that did not arise from either oral or written publication. See Union Ins. Co. v. Knife Co., Inc., 897 F. Supp. 1213, 1217 (W.D. Ark. 1995). There are also no allegations in the underlying complaint of a false publication, unlike cases involving the other definitions of "advertising injury" such as defamation. See, e.g., Callas, 193 F.3d at 957. Therefore, Travelers has not shown that the knowledge of falsity exclusion clearly applies to exclude coverage for the trade dress claim. See Hoepp v. State Farm Ins. Co., 142 N.H. 189, 190 (1997) ("[I]nterpreting the language in favor of the insured and against the insurer is particularly applicable when ambiguities are found in an exclusionary clause.").

In addition, since an action for trade dress infringement does not include a scienter element, liability may arise from negligent or reckless conduct. See 15 U.S.C.A. § 1125(A); see also Bay Elec., 61 F. Supp. 2d at 619 (discussing exclusion in context of trademark infringement). In the underlying complaint in this case, Chantal alleged intentional and deliberate conduct separately as grounds for a recovery of enhanced damages. See 3d

22

Am. Comp. § 12. Since knowledge of falsity is not a requirement for a trade dress infringement claim and since there has been no such finding in the underlying suit, Travelers has not demonstrated the application of the exclusion in this case. Cf. A.J. Sheepskin and Leather Co., Inc. v. Colonia Ins. Co., 709 N.Y.S.2d 82, 83 (N.Y. App. Div. 2000) (affirming exclusion based on underlying findings of deliberate infringement).

4. Notice.

Travelers also contends that EKCO breached the requirement that it provide Travelers with timely notice of the underlying suit. It is undisputed that EKCO failed to notify Travelers of the underlying suit in a timely manner. In order to deny coverage based on late notice, Travelers must establish that it was prejudiced by the delay in notice. See Dover Mills P'ship v. Commercial Union Ins. Cos., 740 A.2d 1064, 1066 (N.H. 1999).

Travelers contends that it was prejudiced by the delay because it was denied the opportunity to participate in the defense of the suit, including the settlement negotiations. Travelers, however, submits no concrete evidence of such prejudice or any suggestion that it would have participated if it had received timely notice. In fact, Travelers received notice of the suit more than a year before the settlement occurred.

23

Travelers denied coverage and apparently made no effort to participate in EKCO's defense or the settlement negotiations. Based on the record presented for summary judgment, Travelers has neither demonstrated prejudice nor created a trialworthy issue as to whether it was prejudiced by the late notice. A party with the burden of proof on an issue cannot rely on "brash conjecture coupled with earnest hope that something concrete will materialize and expect to survive a motion for summary judgment." Fajardo Shopping Ctr., SE v. Sun Alliance Ins. Co., 167 F.3d 1, 14 (1st Cir. 1999) (internal quotations omitted).

C.  Duty to Indemnify

An insurer's duty to indemnify depends upon whether the facts and theories that are the basis of the insured's liability are covered by the policy. See Concord Hosp., 142 N.H. at 61; see also Home Ins. Co. v. St. Paul Fire & Marine Ins. Co., 229 F.3d 56, 66 (1st Cir. 2000) (applying similar Maine law). When a case is settled prior to trial, the duty to indemnify depends upon the basis for the settlement. See id. at 22 (citing Travelers Ins. Co. v. Waltham Indus. Labs. Corp., 883 F.2d 1092, 1099 (1st Cir. 1989)). An insurer bears the burden of showing that the liability incurred by its insured as the result of a settlement of the underlying lawsuit is not covered by the

24

policy.[10]  See RSA 491:22-a; A.B.C. Builders, 139 N.H. at 750.
"An insurer refusing to defend its insured undertakes the risk
that the insured will settle and that it may be held liable for
damages, and will not be heard to complain about the strict form
of the structure of the relief afforded in the underlying case."
Id.

The settlement agreement which resolved the underlying suit
and established EKCO's liability also settled claims brought
against two other defendants, who are not insureds under the
Travelers policies, and counterclaims brought by EKCO and another
defendant against the plaintiffs.  In the agreed order entered in
the underlying suit, the court found that the parties had settled
the case and agreed to dismiss their respective claims.  See
Chantal Cookware Corp. v. Vitrex Gourmet Corp., et al., No. H-97-
3978 (S.D. Tex. Nov. 29, 1999).  The only specific orders
pertained to the patent infringement claim.

The settlement agreement and agreed order suggest that both
the trade dress and design patent infringement claims were
settled by the agreement.  Nothing in the record indicates
otherwise.  Neither the settlement agreement nor the agreed order

---

[10]In contrast, the burden of proof is on the insured to
establish the amount of compensatory damages sought from its
insurer in a breach of contract action.  See Concord Hosp., 142
N.H. at 61.

25

provide any detail concerning the extent of EKCO's individual liability under either claim. Based on the record presented, the court assumes that EKCO's liability is premised on both claims as they are alleged in the third amended complaint.

As has been determined in the context of Travelers's duty to defend, the policies in question cover the underlying claim of trade dress infringement. Travelers has not shown that the same determination would not apply with respect to its duty to indemnify EKCO for its liability arising from that claim. It remains necessary to determine whether the policy provides coverage for EKCO's liability arising from the design patent infringement claim.

Courts have generally concluded that patent infringement is not an "advertising injury" within the meaning of similar policy provisions. See, e.g., United States Test, Inc. v. NDE Envtl. Corp., 196 F.3d 1376, 1381-82 (Fed. Cir. 1999); United Nat'l Ins. Co. v. SST Fitness Corp., 182 F.3d 447, 451-52 (6th Cir. 1999); Tradesoft Techs., Inc. v. Franklin Mut. Ins. Co., 746 A.2d 1078, 1086 (N.J. Super. Ct. App. Div. 2000) (citing cases). Travelers contends that the policy definition of "advertising injury" as an injury arising out of "infringement of copyright, title or slogan" cannot be interpreted to include patent infringement because that claim is not specifically included in the

definition.  See, e.g., <u>United States Test</u>, 196 F.3d at 1381; <u>Herman Miller, Inc. v. Travelers Indem. Co.</u>, 162 F.3d 454, 455 (6th cir. 1998).  The court agrees that patent infringement is not included in the copyright infringement definition and that a reasonable insured in the context of this case would not interpret that definition to cover claims of patent infringement.

Courts have also held that the definition of advertising injury as an injury arising out of the "misappropriation of advertising ideas or style of doing business" does not include claims of patent infringement.  See, e.g., <u>United Nat'l</u>, 182 F.3d at 451; <u>Tradesoft Techs., Inc. v. Franklin Mutual Ins. Co.</u>, 746 A.2d 1078, 1986 (N.J. Super. Ct. App. Div. 2000) (citing cases).  As is discussed above, however, this court is not persuaded by the narrow analysis of the misappropriation definition.  In addition, a design patent infringement claim raises different issues than other patent claims.

"Infringement of a design patent requires that the designs have the same general visual appearance, such that it is likely that the purchaser would be deceived into confusing the design of the accused article with the patented design."  <u>Goodyear Tire & Rubber Co. v. Hercules Tire & Rubber Co., Inc.</u>, 162 F.3d 1113, 1118 (Fed. Cir. 1998).  The design patent claim alleged in the underlying suit here is sufficiently similar to the trade dress

infringement claim to permit a reasonable insured to expect coverage for the same reasons previously discussed in the context of trade dress infringement.[11]  The definition is therefore sufficiently ambiguous in this context to be deemed to cover the patent infringement claim.

To trigger Travelers's duty to indemnify, the design patent infringement must also have been causally connected to EKCO's advertising.  Based on the elements of patent infringement under 15 U.S.C.A. § 271, courts have generally held that an infringement claim, which alleges making, using, or selling the infringing product, does not allege infringement that arose in the course of advertising.  See, e.g., United Nat'l, 182 F.2d at 451; Simply Fresh Fruit v. Cont'l Ins. Co., 94 F.3d 1219, 1222 (9th Cir. 1996); Heil Co. v. Hartford Accident & Indem. Co., 937 F. Supp. 1355, 131363-66 (E.D. Wis. 1996); Bank of the West v. Superior Court, 833 P.2d 545, 559 (Cal. 1992).  In those cases, the courts generally concluded that advertising could only expose patent infringement, not cause it.  More recently, in light of

_____

[11]In the underlying complaint, Chantal alleged that EKCO's kettles infringed Chantal's design patent "because they misappropriate the distinctive, non-functional and ornamental features that the [patent] claims such that the design of [EKCO's] teakettle is substantially the same as the claimed design from the perspective of the ordinary observer."  3d Am. Compl. ¶ 19.

28

the amendment of § 271 in 1996 to include "offers to sell" as actionable infringement, courts have found that patent infringement based on allegations of offers to sell may be causally related to advertising.  See Heritage Mut. Ins., 97 F. Supp. 2d at 921 n.5; Everett Assoc., 57 F. Supp. 2d at 881-83. But see Tradesoft, 746 A.2d at 1086 (holding patent infringement, not within commonly understood meaning of advertising).  In addition, as noted above, the focus of a design patent infringement claim on the perception of the purchaser makes design patent infringement depend upon presentation of the product to the public.

In the underlying suit here, Chantal alleged that EKCO infringed the design patent "by producing, importing, offering to sell and selling the infringing tea kettles," 3d Am. Compl. ¶ 15, and "because [EKCO's kettles] misappropriate the distinctive, non-functional and ornamental features that the [design patent] claims such that the design of [EKCO's] teakettle is substantially the same as the claimed design from the perspective of the ordinary observer," id. ¶ 19.  Chantal also alleged:  "The substantial design similarity and almost identical visual comparison of [EKCO's] kettles to those described in the claims of the [design patent] is such that the ordinary observer is deceived by the appearance of the kettles . . . into believing

29

that those products originated from Chantal."  Id. ¶ 20.

The allegations pertaining to infringement of the design patent are substantially the same as the allegations of trade dress infringement.  The appearance of the tea kettles was a form of advertising used to call public attention to the kettles for purposes of selling them.  EKCO infringed Chantal's design patent when the infringing kettles were offered for sale and sold.  Therefore, the patent infringement claimed in the complaint was caused, in part, by EKCO offering for sale its tea kettles that were advertised by appearance to be Chantal tea kettles.

In summary, based on the record presented for summary judgment, Travelers had a duty under the terms of the applicable policies to defend EKCO in the underlying suit brought by Chantal and is obligated to reimburse EKCO for the costs of that defense.[12]  Travelers is also obligated to indemnify EKCO, within the policy limits, for EKCO's liability arising out of the settlement of the trade dress (including unfair competition) and design patent infringement claims brought by Chantal in the

---

[12]EKCO acknowledges in its objection to Travelers's cross motion for summary judgment that the Travelers policies do not provide coverage to K-Mart Corporation as an additional insured. See Pl. Obj. at 23 n.3.  Therefore, EKCO is deemed to have waived its claim for coverage of its defense and indemnification on behalf of K-Mart Corporation.

30

underlying action.  No issues related to the amount due for the defense or for indemnification are addressed, as those issues were not raised as part of this declaratory judgment action.[13] EKCO is entitled to its court costs and reasonable attorneys' fees incurred in bringing this action.  See RSA 491:22-b.

Conclusion

For the foregoing reasons, EKCO's motion for summary judgment (document no. 19) is granted as to Travelers's obligation to provide a defense and indemnification to EKCO in the underlying suit, Chantal Cookware Corp. v. Vitrex Gourmet Corp., et al., No. H-97-3978, (settled Nov. 29, 1999), as is more fully explained in this order.  EKCO's motion is denied without prejudice to the extent EKCO may have sought a determination as to the amount of defense costs or indemnification to be paid by Travelers and as to EKCO's claim for a defense and indemnification on behalf of K-Mart Corporation.  Travelers's cross motion for summary judgment (document no. 24) is denied. Travelers shall pay EKCO's court costs and reasonable attorneys'

---

[13]The question of damages may be addressed, if necessary, in an appropriate coercive action.  See, e.g., Drop Anchor Realty Trust v. Ouellette, 133 N.H. 742, 745 (1990); see also Lube 495, Inc. v. Jiffy Lube Int'l, Inc., 813 F. Supp. 100, 112 (D. Mass. 1993).

fees incurred in bringing this action.  The clerk of court is directed to enter judgment accordingly and to close the case.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
District Judge

November 29, 2000

cc:  Gordon A. Rehnborg Jr., Esquire
     John A. Lassey, Esquire
     William T. Corbett Jr., Esquire